United States Steel Corporation, Appellant, *v.* Commonwealth of Pennsylvania Unemployment Compensation Board of Review, Appellee, and William Marovich, Intervening Appellee.

554

Argued September 11, 1973, before Judges CRUMLISH, JR., MENCER and BLATT, sitting as a panel of three.

*James T. Carney,* for appellant.

*Sydney Reuben,* Assistant Attorney General, for appellee.

*Richard F. Kronz,* with him *Anthony P. Bartiromo* and *Lichtenstein & Bartiromo,* for intervening appellee.

OPINION BY JUDGE MENCER, November 21, 1973:

This is an appeal by the United States Steel Corporation (Employer) from a decision and order of the Unemployment Compensation Board of Review (Board) holding that no part of a "special initial pension amount" ("special payment") paid to an employee who was involuntarily retired was to be offset against that employee's unemployment compensation benefits because such payment constituted severance pay.

William Marovich (Marovich) had been employed at Employer's Clairton Works for thirty-eight years before being forced to retire on August 31, 1971. He applied for and received retirement benefits under a

plan known as "70/80 retirement" pursuant to a "Pension Agreement" effective July 31, 1969, between Employer and the United Steelworkers of America (Union).

Under this plan Marovich received two types of payments. These are described in Section 3.1 of the 1969 agreement as follows:

"3. AMOUNT OF PENSION

"3.1 Types of Pension Payments

"A pension granted pursuant to Section 2 shall consist of

"(a) a special initial pension amount (hereinafter 'special payment'), except in case of any participant eligible for a pension for permanent incapacity retirement or a deferred vested pension (or as provided in paragraph 6.7), and

"(b) a regular pension amount (hereinafter 'regular pension'), payable in monthly installments except as otherwise provided in paragraph 3.15, provided in accordance with the provisions of this Section 3."

The "special payment" is paid in one lump sum and is payable for the first three full calendar months following the month in which retirement occurs or application for the pension is made. This "special payment" is calculated by multiplying the employee's weekly vacation rate for the year of retirement by thirteen and deducting therefrom the amount of any vacation pay received for that year.

The "regular pension" payment is payable in monthly installments, to an employee who is entitled to a "special payment," for the first full calendar month following the three months for which the "special payment" is made. If an employee is not entitled to a "special payment," the "regular pension" is payable for the first full calendar month following the month in which retirement occurs or application for pension

is made, whichever is later. The "regular pension" is determined by relation to the employee's years of service and average earnings, but with certain additives and deductions.

Section 404(d)(iii) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P. L. (1937) 2897, as amended, 43 P.S. §804(d)(iii), provides: "(d) Notwithstanding any other provisions of this section each eligible employe who is unemployed with respect to any week ending subsequent to the first day of October, one thousand nine hundred seventy-one, shall be paid with respect to such week, compensation in an amount equal to his weekly benefit rate *less* the total of . . . (iii) *that part of a retirement pension* or annuity, if any, received by him under a private pension plan to which a base-year employer of such employe has contributed which is in excess of forty dollars ($40) per week." (Emphasis added.) The question which is presented here is whether this "special payment" is deductible from Marovich's unemployment compensation benefits as a "retirement pension" as this term is used in Section 404(d)(iii).

The referee and the Board refused to deduct this "special payment" on the grounds that such payment was not a "retirement pension," but severance pay. We disagree and, therefore, reverse.

Our scope of review in this type of case is confined to questions of law and, absent fraud, a determination as to whether the Board's findings are supported by the evidence. *Hinkle v. Unemployment Compensation Board of Review,* 9 Pa. Commonwealth Ct. 512, 308 A. 2d 173 (1973). We hold that the Board erred as a matter of law in determining that the "special payment" was not a "retirement pension" as this term is used in Section 404(d)(iii).

We note in passing that, while the "special payment" is referred to as a "pension" throughout the

"Pension Agreement" in which it is contained, labels used are in no way controlling.

The Unemployment Compensation Act does not define "retirement pension," and we are unable to find any cases on this subject. Therefore, the term must be interpreted and applied according to its common and approved usage. *See* Statutory Construction Act of 1972, Act of December 6, 1972, P. L.      (Act No. 290), 1 Pa. S. §1903.

Webster's Seventh New Collegiate Dictionary (1970), defines "pension" as: "a fixed sum paid regularly to a person . . . one paid under given conditions to a person following his retirement from service. . . ." The same dictionary defines "retirement" as: "withdrawal from one's position or occupation."

The "special payment" would fit the above definitions exactly except for the fact that it is payable in one lump sum. Indeed, the Board has consistently held that a special lump sum payment is severance pay. We think that the Board has misconstrued the nature of this "special payment" in failing to consider it as one part of a general pension plan.

The "special payment" is more than a one-time lump sum payment. A reading of the pension agreement reveals that this payment is part of an overall pension plan consisting of the "special payment" and the "regular pension." This is made clear by Section 3.14 of the agreement which states that the "regular pension" is payable following the three months for which the "special payment" is made or upon application if the employee is not entitled to the "special payment." From this it can be inferred that the "special payment" is nothing more than the initial and an advance payment of pension which is paid in lieu of the first three months of "regular pension."

Robert Albright, the employer representative, also made this clear when he testified on the purpose of the

"special payment" as conceived by Employer and Union. Mr. Albright stated that the "regular pension" was felt to be insufficient because the transition from full pay to a lower pension amount was too traumatic for the retired employees. Consequently, the "special payment" was devised as a method for paying a higher amount of pension during the transition period.

The referee and the Board both stated that in determining the "special payment" to be severance pay, they were following the holding of the Superior Court in *Carpenter v. Unemployment Compensation Board of Review*, 213 Pa. Superior Ct. 494, 249 A. 2d 840 (1968). We have read this case and conclude that the referee and Board have misconstrued this holding. In *Carpenter*, the Court neither considered or decided the question of whether or not a special payment was pension rather than severance. More importantly, the Court was not required to distinguish severance payments from pension payments because at that time Section 404 of the Unemployment Compensation Act provided that both severance and pension payments were deductible from Unemployment benefits.

Our holding that the "special payment" is pension rather than severance is further supported by the fact that a true "severance allowance" is created by Section 16 of the 1971 Basic Labor Agreement between Employer and Union. While this alone would not be controlling, we believe it further indicates that the "special payment" is not severance pay but a pension, and has always been regarded as such by both Employer and Union.

In conclusion, we hold that the "special payment" is a pension within the meaning of the term "retirement pension" in Section 404(d)(iii) of the Unemployment Compensation Law. The Board, therefore, erred as a matter of law in concluding that this payment was

severance pay and in refusing to offset it against Marovich's unemployment compensation benefits.

We, therefore, issue the following

### ORDER

Now, November 21, 1973, the order of the Unemployment Compensation Board of Review is hereby reversed and it is ordered that an amount equal to the $1,577.24 "special payment," received by William Marovich, be deducted from his unemployment compensation benefits for the period after October 1, 1971, in accord with Section 404(d)(iii) of the Unemployment Compensation Law, as amended, 43 P.S. §804(d)(iii).