Pennsylvania State Education Association et al., Petitioners *v.* Baldwin Whitehall School District et al., Respondents.

.150 [REDACTED]

Argued March 8, 1977, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Richard Kirschner,* with him *Neal Goldstein,* for petitioners.

*Robert P. Meehan,* Deputy Counsel, with him *Lester Eisenstadt,* Deputy Attorney General and Chief Counsel, *Edward R. Lawrence, Jr.,* and *Lawrence & Lawrence,* for respondents.

*Michael I. Levin,* with him *William Fearen,* and *Cleckner & Fearen,* for amicus curiae, Pennsylvania School Boards Association.

OPINION BY JUDGE BLATT, April 29, 1977:

The plaintiffs[1] have filed a Petition for Review within the original jurisdiction of this Court requesting a determination of the legality of a provision of

---

[1] Pennsylvania State Education Association, Baldwin Whitehall Education Association, Ann Clarke, Alma Gorse, Bette Linhart and John Stone. This action was discontinued by the plaintiffs as to the Department of Education and John C. Pittenger, Secretary of Education.

the collective bargaining agreement entered into by the Baldwin Whitehall Education Association and the Baldwin Whitehall School District. The provision in question is Article X of the agreement, and is entitled "Other Employee Benefits." It provides in part as follows:

C. *Retirement Allowance*

1. An employee who retires on or after attaining the age of superannuation as established by the Pennsylvania Public School Employees' Retirement System shall be entitled to receive as additional compensation payable at the time of retirement an amount computed by multiplying the number of such employees' unused accumulated sick days up to a maximum of 150 such days by:

a. $20.00 for the 1975-76 school term

b. $22.50 for the 1976-77 school term

c. $25.00 for the 1977-78 school term

2. In order to be eligible to receive retirement allowance, an employee must:

a. have completed at least 10 years of service with the district;

and

b. have completed at least 20 years service as a professional ·employee with the district and/or another school system.

3. Except in emergencies, an employee shall not receive retirement allowance unless he or she notified the Superintendent in writing of the intention to retire and the date of projected retirement at least 45 days prior to that date. Said notice shall not be required in the case of a mandatory retirement or a retirement that becomes effective after the close of school in the spring but prior to August 1.

The individual plaintiffs claim entitlement to a retirement allowance pursuant to this provision, and the defendant Auditor General has filed an answer alleging as new matter that "cash payment to professional employees upon retirement based upon accumulated, unused sick leave is a violation of the Public School Code of 1949" and "that provisions of collective bargaining agreements containing payment structures of this type run afoul of Section 703 of the Public Employe Relations Act . . . and are, therefore, void." The defendant Baldwin Whitehall School District has also filed an answer contending that it is a mere stake holder in this controversy and that it recognizes its duty both to pay the retirement allowance provided in the contract and to obey the laws of the Commonwealth of Pennsylvania.

Because there are no issues of material fact to be resolved, the plaintiffs have filed a motion for judgment on the pleadings and we, therefore, are concerned here with the following legal issue, as framed by the defendant Auditor General:

> Whether a school board has the authority, prerogative, or discretion to agree to and implement a collective bargaining agreement providing for payments to retiring teachers computed on the basis of accumulated unused sick leave.

We believe that, pursuant to the Uniform Declaratory Judgments Act[2], we may enter an order deter-

---

[2] Section 6 of the Act of June 18, 1923, P.L. 840, *as amended,* 12 P.S. §836, provides, *inter alia,* as follows:

> Relief by declaratory judgment or decree may be granted in all civil cases where (1) an actual controversy exists between contending parties, or (2) where the court is satisfied that antagonistic claims are present between the parties involved which indicate imminent and inevitable litigation, or (3) where in any such case the court is satisfied that a party asserts a legal relation, status, right, or

mining the legality of the contractual provision at issue here.

Section 610 of the Public School Code of 1949[3] (Code), 24 P.S. §6-610, provides as follows:

> The board of school directors in every school district shall have the right to use and pay out, in the manner herein provided, any funds of the district for any and all of the purposes therein provided, subject to all the provisions of this act. The use or payment of any public school funds of any school district, in any manner or for any purpose not provided in this act, shall be illegal.

The Auditor General argues that the retirement allowance here involved is not authorized by the Code and that, absent such authorization, Section 610 voids the retirement allowance provided in the agreement. Neither he nor any other party, however, has directed our attention to any specific authority in the Code which either expressly provides for, or expressly prohibits, the payment of retirement allowances. Nor has our independent research discovered any such express statutory provision. We believe, however, that such authority exists, and has been recognized

privilege in which he has a concrete interest and that either (i) there is a challenge or denial of such asserted relation, status, right, or privilege by an adversary party who also has or asserts a concrete interest therein, or (ii) that there is an uncertainty with respect to the effect of such asserted relation, status, right, or privilege upon the determination of any tax imposed or to be imposed by any taxing authority, including the United States, any state and any political subdivision thereof, and the court is satisfied also that a declaratory judgment or decree will serve to terminate the uncertainty or controversy giving rise to the proceeding.

[3] Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §1-101 et seq.

by our Supreme Court as a necessary implication of the interaction between the Public School Code of 1949 and the Public Employe Relations Act[4] (PERA).

In *Labor Relations Board v. State College Area School District*, 461 Pa. 494, 337 A.2d 262 (1975), our Supreme Court considered the duties imposed by PERA upon public employers, including boards of school directors.

> The declaration of policy contained in Act 195, section 101 clearly establishes that the legislature concurred with the [Hickman] commission's belief that the right to collective bargaining was necessary to promote orderly and constructive relationships between public employers and employes.[5]
>
> . . . .

---

[4] Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §1101.101 et seq.

[5] "The General Assembly of the Commonwealth of Pennsylvania declares that it is the public policy of this Commonwealth and the purpose of this act to promote orderly and constructive relationships between all public employers and their employes subject, however, to the paramount right of the citizens of this Commonwealth to keep inviolate the guarantees for their health, safety and welfare. Unresolved disputes between the public employer and its employes are injurious to the public and the General Assembly is therefore aware that adequate means must be established for minimizing them and providing for their resolution. Within the limitations imposed upon the governmental processes by these rights of the public at large and recognizing that harmonious relationships are required between the public employer and its employes, the General Assembly has determined that the overall policy may best be accomplished by (1) granting to public employes the right to organize and choose freely their representatives; (2) requiring public employers to negotiate and bargain with employe organizations representing public employes and to enter into written agreements evidencing the result of such bargaining; and (3) establishing procedures to provide for the protection of the rights of the public employe, the public employer and the public at large." Section 101 of PERA, 43 P.S. §1101.101.

The relationship between sections 701 and 703 is particularly significant in a highly regulated area such as public education. Article 3, Section 14 of the Pennsylvania Constitution, P.S., provides:

'The General Assembly shall provide for the maintenance and support of a thorough and efficient system of public education to serve the needs of the Commonwealth.'

Under the Public School Code of 1949 the General Assembly provided a comprehensive system to meet the educational needs of the citizens of this Commonwealth. In so doing, school districts were created as an agency of the State charged with the responsibility of administering the educational program within its assigned territory. Slippery Rock Area Joint School System v. Franklin Twp. School Dist., 389 Pa. 435, 133 A.2d 848 (1957). *To enable the school districts to discharge this constitutional mandate, the General Assembly vested in the school districts the necessary powers.* Public School Code of 1949, *supra,* §2-211.[6] (Emphasis added, footnote added.)

*Labor Relations Board v. State College Area School District,* 461 Pa. at 503-508, 337 A.2d at 266-269.

It seems clear to us, therefore, that a school district has the authority, and, in fact, the duty, under Section 701 of PERA[7], 43 P.S. §1101.701, to bargain col-

---

[6] "The several school districts in this Commonwealth shall be, and hereby are vested as, bodies corporate, with all necessary powers to enable them to carry out the provisions of this act." Section 211 of the Code, 24 P.S. §2-211.

[7] "Collective bargaining is the performance of the mutual obligation of the public employer and the representative of the public employes to meet at reasonable times and confer in good faith with respect to wages, hours and other terms and conditions of employment, or the negotiation of an agreement or any question

lectively with its employees on matters relating to wages, hours, and other terms and conditions of employment. And because we have stated previously that a retirement allowance is a bargainable "term or condition of employment," *Labor Relations Board v. State College Area School District,* 9 Pa. Commonwealth Ct. 229, 306 A.2d 404 (1973)[8]; *rev'd on other grounds,* 461 Pa. 494, 337 A.2d 262 (1975), we must hold that the school district had the authority here to agree to the provision of the collective bargaining agreement here in question.[9]

---

arising thereunder and the execution of a written contract incorporating any agreement reached but such obligation does not compel either party to agree to a proposal or require the making of a concession."

[8] *"The words 'other items and conditions of employment'* are no doubt susceptible to varying interpretations . . . . We believe they *refer to such things as* the various physical conditions of one's working surroundings; what quantity and quality of work is required during one's work period; what safety practices prevail at and near the job site; what sick and hospital benefits are available and what vacation benefits are available; *what retirement benefits will be provided and how eligibility will be determined."* Labor Relations Board v. State College Area School District, 9 Pa. Commonwealth Ct. at 243, 306 A.2d at 412. (Emphasis added.)

[9] *See also Board of Education of Philadelphia v. Philadelphia Federation of Teachers,* 464 Pa. 92, 346 A.2d 35 (1975), where the school board had agreed in a collective bargaining agreement to submit to binding arbitration the propriety of the discharge of non-tenured teachers, and later argued that provisions of the Public School Code of 1949 prohibited the delegation of this power. Our Supreme Court held that such a provision was valid, in that there was no evidence of a violation of any legal restriction upon the power of the board, and, citing from *Labor Relations Board v. State College Area School District, supra,* repeated that

'The mere fact that a particular subject matter may be covered by legislation does not remove it from collective bargaining under section 701 if it bears on the question of wages, hours and conditions of employment. We believe that section 703 only prevents the agreement to and im-

The Auditor General argues further that Section 1154 of the Code, 24 P.S. §11-1154, provides the only applicable statutory authority for the payment of sick leave, and so would invalidate the provision of this agreement here in question. This section provides, *inter alia,* as follows:

> (a)  In any school year whenever a professional or temporary professional employe is prevented by illness or accidental injury from following his or her occupation, the school district shall pay to said employe for each day of absence the full salary to which the employe may be entitled as if said employe were actually engaged in the performance of duty for a period of ten days.  Any such unused leave

---

plementation of any term which would be in violation of or inconsistent with any statutory directive.'
*Board of Education of Philadelphia, supra,* 464 Pa. at 97, 346 A.2d at 38.

We believe that the instant case is distinguishable from those cases where we held provisions of collective bargaining agreements to have been in violation of specific provisions of the Code.  See, for example, *Allegheny Valley School District v. Allegheny Valley Educational Association,* 25 Pa. Commonwealth Ct. 559, 360 A.2d 762 (1976) and *Cumberland Valley Education Association v. Cumberland Valley School District,* 24 Pa. Commonwealth Ct. 167, 354 A.2d 265 (1976), where we held that Section 1169 of the Code, 24 P.S. §11-1169, specifically provided that teachers on sabbatical leave could only receive one-half pay during such leave and a provision of a collective bargaining agreement which provided otherwise was unenforceable, and *Dauphin County Technical School Education Association v. Dauphin County Area Vocational-Technical School Board,* 24 Pa. Commonwealth Ct. 639, 357 A.2d 721 (1976), where we held that Section 1122 of the Code, 24 P.S. §11-1122, provided the only grounds upon which a professional employe's contract could be terminated and that a provision of a collective bargaining agreement was unenforceable insofar as the remedy for non-compliance was the termination of the professional employe involved.

shall be cumulative from year to year in the school district of current employment or its predecessors without limitation. All or any part of such accumulated unused leave may be taken with full pay in any one or more school years. No employe's salary shall be paid if the accidental injury is incurred while the employe is engaged in remunerative work unrelated to school duties.[10]

. . . .

(e) Any board of school directors may adopt rules or regulations pertaining to the payment of salaries of employes when absent from duty, extending the period of leave with or without pay in excess of that herein provided, or authorizing leaves with pay for other purposes. This act is not intended to repeal any rule or regulation of any board of school directors now in effect which does provide for such additional compensation or additional period of leave with pay.

In our opinion, however, the very fact that Section 1154 clearly provides for the payment of sick leave makes it inapplicable here, for we are concerned here with the validity, not of a sick leave allowance, but with a retirement allowance which merely happens to be computed on the basis of accumulated sick leave.[11]

---

[10] Section 1154(a) further provides, in part, that when a professional employe changes employment from one school district to another, his accumulated sick leave is retained, subject to a maximum, and that the board of school directors may require medical certification for any period for which sick leave is required to be paid.

[11] We do not express an opinion here as to whether or not a provision of a collective bargaining agreement which provided for payment to teachers for accumulated sick leave would be valid.

The Auditor General finally argues that Section 703 of PERA[12], 43 P.S. §1101.703, voids the contract provision here involved, but it has previously been held that

> items bargainable under section 701 are only excluded under section 703 where other applicable statutory provisions explicitly and definitively prohibit the public employer from making an agreement as to that specific term or condition of employment.

*Labor Relations Board v. State College Area School District,* 461 Pa. at 510, 337 A.2d at 270 (1975). Such is not the case here.

We will enter an order declaring valid the collective bargaining provision here involved.

ORDER

AND Now, this 29th day of April, 1977, the petitioners' motion for judgment on the pleadings is granted and the Court declares that a provision of a collective bargaining agreement which provides for the payment of a retirement allowance computed on the basis of accumulated unused sick leave to teachers does not violate the provisions of either the Public School Code of 1949 or the Public Employe Relations Act and is, therefore, valid.

---

DISSENTING OPINION BY JUDGE MENCER:

I respectfully dissent. This dissent is premised on the correctness of footnote 11 of the majority opinion which reads as follows: "We do not express an opinion here as to whether or not a provision of a

---

[12] "The parties to the collective bargaining process shall not effect or implement a provision in a collective bargaining agreement if the implementation of that provision would be in violation of, or inconsistent with, or in conflict with any statute or statutes enacted by the General Assembly of the Commonwealth of Pennsylvania or the provisions of municipal home rule charters."

collective bargaining agreement which provided for payment to teachers for accumulated sick leave would be valid.''

Therefore, it will be unnecessary to address that question here, but, if perchance the majority's opinion is viewed as supporting the legality of paying teachers for unused sick leave, it should be noted that I do not subscribe to such a conclusion.

The majority states: ''[W]e are concerned here with the validity, not of a sick leave allowance, but with a retirement allowance which merely happens to be computed on the basis of accumulated sick leave.'' Since the majority's holding is pinpointed to the designation of Article X(C) of the collective bargaining agreement as a retirement allowance, I will so regard it for the purpose of this dissent, but, as I read that provision, it appears to me to be more accurately designed as severance pay. It provides for a lump-sum payment ''as additional compensation payable at the time of retirement.'' While this payment is captioned in the agreement as ''Retirement Allowance,'' we might take note as we did in *United States Steel Corp. v. Unemployment Compensation Board of Review,* 10 Pa. Commonwealth Ct. 553, 312 A.2d 460 (1973), that labels used are in no way controlling.

The issue dealt with by the majority is whether a retirement allowance is a bargainable term or condition of employment as to which the school district has the duty, under Section 701 of the Public Employe Relations Act (PERA),[1] to bargain collectively with its employees. The majority, relying on language in *Pennsylvania Labor Relations Board v. State College Area School District,* 9 Pa. Commonwealth Ct. 229, 306 A.2d 404 (1973), *rev'd on other grounds,* 461 Pa.

---

[1] Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §1101.701.

494, 337 A.2d 262 (1975), concluded that it "must hold that the school district had the authority here to agree to the provision of the collective bargaining agreement here in question."

An examination of our opinion in that case will indicate that the language relied upon to decide the instant case was found in that portion of the opinion in which we were endeavoring to analyze and reconcile Sections 701 and 702 of PERA, and the reference to retirement benefits was in the way of attempting to illustrate or perhaps speculate as to the kind of items that the Legislature contemplated being encompassed by Section 701 of PERA. Now that the specific question of the legality of bargaining collectively as to retirement benefits has been presented to this Court, we may need to concede that the reference by this writer to retirement benefits, as set forth in footnote 8 of the majority opinion here, was more unfortunate than controlling.

As I view the narrow issue before us, the key to its resolution is Section 703 of PERA, 43 P.S. §1101.703, which provides:

> The parties to the collective bargaining process shall not effect or implement a provision in a collective bargaining agreement if the implementation of that provision would be in violation of, *or inconsistent with, or in conflict* with any statute or statutes enacted by the General Assembly of the Commonwealth of Pennsylvania or the provisions of municipal home rule charters. (Emphasis supplied.)

With what statute is Article X(C) of the agreement in question here inconsistent or in conflict? I would suggest the answer to be the Public School Employees' Retirement Code (Code), Act of October 2, 1975, P.L. 298, 24 Pa.C.S. §§8101-8534. Even a

cursory examination of this Code discloses its all-inclusive nature in dealing with retirement benefits for school employees. It makes membership mandatory for all school employees except any officer or employee of the Department of Education, State-owned educational institutions, community colleges, area vocational-technical schools, technical institutes, or the Pennsylvania State University and who is a member of the State Employees' Retirement System or a member of another program approved by the employer and any school employee who is employed on a per diem or hourly basis for less than 80 full-day sessions or 500 hours in any fiscal year. Optional membership is provided for any officer or employee of a governmental entity who subsequent to December 22, 1965 and prior to July 1, 1975 administers, supervises, or teaches classes financed wholly or in part by the Federal Government so long as he continues in such service.

The Code provides in detail for contributions, benefits, administration, eligibility credits, funding and supervision. It appears plain for all to see that the Legislature intended by the comprehensive provisions of the Code to preempt from the local school districts the subject of retirement benefits as it pertains to school employees. Yet our decision today not only permits school districts to bargain collectively on this subject but holds that those districts have the duty to so bargain with school employees.

The result will be that when a teacher in this Commonwealth retires he will receive a life annuity attributable to his credited service in accord with the provisions of the Code which will be equal to that paid all other retiring school employees with the same work history and, in addition, will receive a lump-sum retirement allowance which will vary from school district to school district, the size of which will

be determined by the bargaining skills and negotiating pressures which his union has exerted and its representatives have exhibited.

Here the retirement allowance is computed on the basis of accumulated sick leave, but, if today's holding is correct, then retirement allowances measured in terms of a dollar figure will logically follow and be legally permissible. Can it be that teachers, through the collective bargaining process, will be able to receive $5,000 or $10,000 or $25,000 at the time of their retirement, *in addition* to the retirement benefits to which they are entitled under the Code? Who will pay these agreed-upon retirement allowances? Will it be only local taxation effort or will it be in part reimbursed by state school subsidies and, if the latter, did the Legislature so intend when it wrote Section 701 of PERA?

If this holding would be applicable, as it would seem to be, to all state employees, not just school employees, one would have to conclude that the Legislature intended to provide a second retirement system to result from collective bargaining under PERA to supplement benefits due employees under State retirement programs. I cannot so conclude.

Therefore, I would hold that the retirement-allowance provision in question is inconsistent with and in conflict with the Public School Employees' Retirement Code and must be unenforceable as in derogation of Section 703 of the Public Employe Relations Act.

Judge KRAMER joins in this dissent.