In Re: Appeal of Rose Tree Media School District.
Rose Tree Media School District, Appellant.

Argued October 1, 1979, before Judges MENCER, BLATT and CRAIG, sitting as a panel of three.

*Joseph A. Damico, Jr.,* with him, *Steven G. Brown,* of *Petrikin, Wellman, Damico & Carney,* for appellant.

*Alexander A. DiSanti,* with him, *Thomas P. Hamilton, Jr.,* of *Richard, Brian, DiSanti & Hamilton,* for appellees.

OPINION BY JUDGE BLATT, January 9, 1980:

The Rose Tree Media School District (school district) appeals here from an order of the Court of Common Pleas of Delaware County which affirmed an arbitrator's award made under a collective bargaining agreement between the School District and the Rose Tree Media Education Association (Association). The School District argues that the award should be set aside because (1) it is not rationally derived from the agreement and (2) it is unconscionable.

At issue is the construction of a provision in the agreement which grants teachers a special retire-

ment salary increment based on accumulated unused sick-leave days:[1]

> Teachers contemplating retirement under the Pennsylvania Public School Employee's Retirement System may notify the Board of this intention within three years prior to their effective retirement date. The Board shall grant the pending retiree a special salary increase of $1/N$ ($N$ = number of years prior to retirement teacher entered the plan) of all unused accumulated sick leave days over thirty (30) days. The employee's base per diem rate shall be used to determine this increase. This special increment shall be calculated once at the initiation of the plan only.

Although the provision does not by its terms mention any limit on the number of days that can be accumulated or on the amount of the increase, the School District argues that a teacher's increment for any single year cannot exceed the teacher's maximum salary for that year as provided in the salary schedule of the agreement. The Association's position is that no maximum is applicable. The arbitrator, to whom the question of interpretation was submitted, agreed with the Association, and we, of course, must uphold the arbitrator "[i]f his interpretation can in any rational way be derived from the Agreement viewed in light of its language, its context and any other indicia of the parties' intention." *County of Lackawanna v. Service Employee's International Union*, 35 Pa. Commonwealth Ct. 531, 536, 387 A.2d 161, 164 (1978).

---

[1] We upheld the validity of bargaining for such a provision in *Pennsylvania State Education Association v. Baldwin Whitehall School District*, 30 Pa. Commonwealth Ct. 149, 372 A.2d 960 (1977).

The arbitrator's conclusion was buttressed by evidence consisting of letters (written several months after the agreement was reached) from correspondence between a teacher and the assistant superintendent in which the teacher inquired whether or not the salary maximums applied to the special increment and the school official replied unequivocally that they did not.[2] Clearly, therefore, the arbitrator's interpretation was rationally derived from the unambiguous language of the agreement and the written indicia of the parties' intent.[3]

The School District's argument, that we ought to vacate the award as unconscionable because the cost of paying the special increments under the award would be prohibitive, is based upon the School District's calculations as to the increments it would have to pay under the award. It asserts that, of the two

---

[2] The teacher wrote:

Dear Dr. Baillie:

Am I correct in assuming that the special increment to my salary from unused sick leave would be applicable in full in 1975-76 and 1976-77 regardless of the stated maximum?

Sincerely,
/S/ H. E. Marie Boyle

The assistant superintendent replied:

Dear Ms. Boyle:

You are correct in assuming that the special retirement increment will be applicable to your salary regardless of stated maximum. It is, in effect, a super-maximum.

Very truly yours,
/S/ John K. Baillie
Assistant Superintendent for
Administration

[3] We note, in addition, that a similar provision in the parties' agreement as to previous years contained a maximum number of days which could be accumulated. It would appear, therefore, that the School District could have again bargained for a maximum had it so desired.

teachers who so far have requested their increments, one would receive $18,183.90 and the other $21,362.88 above their respective normal salaries for the last year of their employment. We see no basis, however, for its application of this argument here. In the first place, we are aware of no authority, and the School District cites none, for the application of a doctrine of unconscionability to collective bargaining agreements. In the second place, while the award may, as the School District argues, result in a financial burden, the record before us contains no evidence as to any mistake which would justify our relieving the School District of its obligation under the doctrine of rescission. Although it may not have fully understood the consequences of its agreement,[4] it is clear from the letter of its assistant superintendent that it intended the construction which the arbitrator has given to the disputed provision. Finally, the mere improvidence of an agreement does not justify the intervention of a court, *Harnish v. Shannon*, 392 Pa. 419, 141 A.2d 347 (1958), especially where, as here, the parties were dealing at arms' length, were of equal bargaining power, and were each represented by counsel.

The order of the court of common pleas affirming the arbitrator's award is therefore affirmed.

#### ORDER

AND Now, this 9th day of January, 1980, the Court of Common Pleas of Delaware County is hereby affirmed.

---

[4] The arbitrator believed that the School had "stumbled" into an unfortunate agreement "because it had not fully analyzed the language for which it settled." He concluded:

It may not be wise for the Union to collect its pound of flesh, but this consideration can emerge only as a voluntary agreement between the parties.

This decision was reached prior to the expiration of the term of office of Judge DiSalle.

---

Dissenting Opinion by Judge Mencer, January 9, 1980:

I respectfully dissent. The majority states that "[a]t issue is the construction of a provision in the agreement which grants teachers a special retirement salary increment based on accumulated unused sick-leave days" and that "the validity of bargaining for such a provision" was upheld in *Pennsylvania State Education Association v. Baldwin Whitehall School District*, 30 Pa. Commonwealth Ct. 149, 372 A.2d 960 (1977).

I believe that the special retirement salary increment in question is unenforceable as in derogation of Section 703 of the Public Employee Relations Act (PERA),[1] and therefore I must again express my strenuous objection to the bestowing of validity upon such an increment. I know of no way to better express my position than to restate what I wrote in dissent in *Baldwin, supra:*

As I view the narrow issue before us, the key to its resolution is Section 703 of PERA, 43 P.S. §1101.703, which provides:

'The parties to the collective bargaining process shall not effect or implement a provision in a collective bargaining agreement if the implementation of that provision would be in violation of, *or inconsistent with, or in conflict* with any statute or statutes enacted by the General Assembly of the Commonwealth of Pennsylvania or the provisions of municipal home rule charters.' (Emphasis supplied.)

---

[1] Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §1101.703.

With what statute is [the provision] of the agreement in question here inconsistent or in conflict? I would suggest the answer to be the Public School Employees' Retirement Code (Code), Act of October 2, 1975, P.L. 298, 24 Pa. C.S. §§8101-8534. Even a cursory examination of this Code discloses its all-inclusive nature in dealing with retirement benefits for school employees. It makes membership mandatory for all school employees except any officer or employee of the Department of Education, State-owned educational institutions, community colleges, area vocational-technical schools, technical institutes, or the Pennsylvania State University and who is a member of the State Employees' Retirement System or a member of another program approved by the employer and any school employee who is employed on a per diem or hourly basis for less than 80 full-day sessions or 500 hours in any fiscal year. Optional membership is provided for any officer or employee of a governmental entity who subsequent to December 22, 1965 and prior to July 1, 1975 administers, supervises, or teaches classes financed wholly or in part by the Federal Government so long as he continues in such service.

The Code provides in detail for contributions, benefits, administration, eligibility credits, funding and supervision. It appears plain for all to see that the Legislature intended by the comprehensive provisions of the Code to preempt from the local school districts the subject of retirement benefits as it pertains to school employees. Yet our decision today not only permits school districts to bargain collectively on this subject but holds that those dis-

tricts have the duty to so bargain with school employees.

The result will be that when a teacher in this Commonwealth retires he will receive a life annuity attributable to his credited service in accord with the provisions of the Code which will be equal to that paid all other retiring school employees with the same work history and, in addition, will receive a lump-sum retirement allowance which will vary from school district to school district, the size of which will be determined by the bargaining skills and negotiating pressures which his union has exerted and its representatives have exhibited.

Here the retirement allowance is computed on the basis of accumulated sick leave, but, if today's holding is correct, then retirement allowances measured in terms of a dollar figure will logically follow and be legally permissible. Can it be that teachers, through the collective bargaining process, will be able to receive $5,000 or $10,000 or $25,000 at the time of their retirement, *in addition* to the retirement benefits to which they are entitled under the Code?[2] Who will pay these agreed-upon retirement allowances? Will it be only local taxation effort or will it be in part reimbursed by state school subsidies and, if the latter, did the Legislature so intend when it wrote Section 701 of PERA [43 P.S. §1101.701]?

If this holding would be applicable, as it would seem to be, to all state employees, not just school employees, one would have to conclude that the Legislature intended to provide

---

[2] In the instant case, one teacher would receive $18,183.90 and the other teacher, $21,362.88, as special retirement increments.

a second retirement system to result from collective bargaining under PERA to supplement benefits due employees under State retirement programs. I cannot so conclude.

Therefore, I would hold that the retirement-allowance provision in question is inconsistent with and in conflict with the Public School Employees' Retirement Code and must be unenforceable as in derogation of Section 703 of the Public Employe Relations Act.

30 Pa. Commonwealth Ct. at 161-63, 372 A.2d 966-67 (emphasis in original) (footnote added).