504 A.2d 958

Anthony S. Pane et al., Petitioners *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Elmer Reiser et al., Petitioners *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Submitted on briefs November 14, 1985 to Judges MACPHAIL and DOYLE, and Senior Judge BARBIERI, sitting as a panel of three.

*Richard E. Gordon, Grossinger & Gordon,* for petitioners.

*Thomas H. May,* for intervenor, AMPCO-Pittsburgh Corporation.

OPINION BY JUDGE DOYLE, February 6, 1986:

This is an appeal by Anthony S. Pane (Claimant)[1] from an order of the Unemployment Compensation Board of Review (Board) affirming a referee's determination that a special initial payment Claimant received pursuant to his employer's retirement policy is subject to the pension offset provision of Section 404 (d)(iii) of the Unemployment Compensation Law,[2] 43 P.S. §804(d)(iii).

The facts are not in dispute. Claimant was employed by Wyckoff Steel Division, Ampco-Pittsburgh Company (Employer) for forty-three years as a security guard. Claimant's last day of work was on or about December 19, 1983. Effective February 29, 1984, Employer closed its plant and on March 1, 1984, Claimant officially retired. At the time the plant closed Claimant had acquired certain rights under the Employer's pension agreement. Under the plan in which Claimant was a participant Claimant was entitled to a special initial payment to be calculated as follows:

> The amount of special payment for a participant who was entitled to receive a vacation in the year of retirement or who would have been entitled to receive a vacation in the year of retirement except for such retirement shall be calculated as follows:

---

[1] Claimant is a token claimant and disposition of the legal issue in his case will resolve other employees' entitlement to benefits as well. The other named Claimant, Elmer Reiser, and the other employees signed stipulations that the case of Claimant Pane would be determinative of their respective claims. Accordingly, we have not set forth the facts in each case and issue orders only with respect to the two named Claimants.

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended.*

(1) The number of weeks of vacation to which the participant was or would have been entitled will be determined.

(2) The number determined in (1) above shall be subtracted from 13 (14 in the case of a participant eligible for more than four weeks of regular vacation in the year of retirement).

(3) The number determined in (1) above shall be multiplied by the participant's vacation pay.

(4) The result determined in (2) above shall be multiplied by participant's adjusted vacation pay.

(5) The amounts calculated in (3) and (4) above shall be added together and then reduced by all vacation pay the participant received in such year.[3]

Claimant was entitled to five weeks vacation payment at $558.32 per week (totalling $2,791.10). At the time he retired Claimant had not taken his five weeks vacation. Claimant's remaining nine weeks were calculated at the adjusted vacation rate of $356.67 per week (totalling $3,210.03). The referee found that the special initial payment Claimant received was subject in its entirety to Section 404(d)(iii) as a pension payment.[4] The referee's decision affirmed the determination of the Office of Employment Security.

---

[3] It is important to distinguish, as does Claimant, that vacation pay serves two purposes with respect to this special initial payment. As Claimant explains, "[t]he first role, to calculate the amount of the employees['] Special Initial Payment, does not negate the second function, namely to represent accrued vacation benefits, which if already paid, reduces the amount of the Special Initial Payment accordingly." Claimant's brief pp. 16-17.

[4] Section 404(d) provides in pertinent part:

Notwithstanding any other provisions of this section each eligible employe who is unemployed with respect to any week ending subsequent to July 1, 1980 shall be paid, with

On appeal Claimant argues first that the special initial payment was severance pay rather than a pension payment. He argues in the alternative that even if his nine weeks of *adjusted vacation pay* constitutes a pension payment under Section 404(d)(iii), the five weeks of *regular vacation pay* does not, but is, instead, exempted from deduction in the calculation of his weekly benefit rule pursuant to the exception in Section 404(d)(ii). Claimant also argues that Office of Employment Security regulation 65.104, 34 Pa. Code §65.104, upon which the referee relied, is contrary to Section 404(d) and that the application of Section 404(d)(iii) to Claimant has denied him equal protection.

As to the question of whether the special initial payment is itself a pension we have previously addressed this issue in *U.S. Steel Corp. v. Unemployment Compensation Board of Review,* 10 Pa. Commonwealth Ct. 553, 312 A.2d 460 (1973) wherein we rejected the argument that such payment was severance pay and held instead that it was a retirement pension. But, although *U.S. Steel* is controlling here, it controls only with respect to the nine week period. This is because the only issue in *U.S. Steel* was "whether this 'special payment' is deductible from [claimant's] unemployment compensation benefits as a 'retirement pension' as this term is used in Section 404(d)(iii)."

respect to such week, compensation in an amount equal to his weekly benefit rate less the total of . . . (ii) vacation pay, if any, which is in excess of his partial benefit credit, except when paid to an employe who is permanently or indefinitely separated from his employment and (iii) an amount equal to the amount of a governmental or other pension, retirement or retired pay, annuity, or any other similar periodic payment which is based on the previous work of such individual, which is reasonably attributable to such week, in accordance with this subsection. . . .

*Id.* at 556, 312 A.2d at 462.[5] A close reading of *U.S. Steel* discloses that no argument was ever advanced there as to whether the weeks of regular vacation pay as distinguished from the weeks of adjusted vacation pay were subject to the offset provision of Section 404(d)(iii). Claimant here argues that these five weeks do not fall within the pension offset provision of 404(d)(iii) but rather within the vacation *exception* appearing in 404(d)(ii). It is undisputed that had Claimant actually taken his five weeks of vacation before being forced into early retirement he would have received nine weeks of special initial payment benefits and the additional five weeks of payment would not have been subject to the offset provision. But because Claimant was forced to retire before he took his vacation pay the Board and Employer now seek to subject him to fourteen weeks of offset. We agree with Claimant that this result is unfair. The determination of whether the offset provision applies cannot properly be predicated upon when an employee schedules his or her vacations. Such result has the effect of penalizing certain employees for no reason and is impermissibly arbitrary. Section 404(d)(ii) clearly establishes that vacation pay paid to an employee who is permanently or indefinitely separated from employment is not subject to offset. The mere fact that Claimant received this pay after his retirement was effectuated does not alter the fact that it was payment to which he was entitled for purposes of accrued vacation time. Additionally, Section 404(d)(ii) imposes no literal requirement that vacation pay paid to a permanently or indefinitely separated employee be received prior to retirement. Accordingly, we now hold that regular vaca-

---

[5] Although Section 404(d)(iii) was amended subsequent to our decision in *U.S. Steel,* the amendment is not relevant to the precise legal issue in *U.S. Steel* or the instant case.

tion pay, whether received by an employee before a forced retirement due to a plant closing or after, is, pursuant to Section 404(d)(ii), not to be deducted in calculating the employee's weekly benefit rate.[6]

ORDER IN 2122 C.D. 1984

Now, February 6, 1986, the order of the Unemployment Compensation Board of Review, No. B-232032, dated June 27, 1984 is hereby reversed insofar as it imposed a deduction for the five weeks of Pane's regular vacation pay and affirmed in all other respects.

ORDER IN 2539 C.D. 1984

Now, February 6, 1986, the order of the Unemployment Compensation Board of Review, No. B-233028, dated July 27, 1984 in hereby reversed insofar as it imposed a deduction for the weeks of Reiser's regular vacation pay and affirmed in all other respects.

[6] Because of our determination that Claimant's regular vacation pay is an exception to deduction, we need not consider his arguments that the Office of Employment Security Regulation is contrary to the Law and that he has been denied equal protection.