653 A.2d 1210

CITY OF PITTSBURGH, Appellant,

v.

COMMONWEALTH of Pennsylvania, PENNSYLVANIA
LABOR RELATIONS BOARD,

and

American Federation of State, County and
Municipal Employees, District Council
84, AFL–CIO, Appellees.

Supreme Court of Pennsylvania.

Argued Sept. 19, 1994.

Decided Jan. 23, 1995.

536

Marianne S. Malloy, Asst. City Solicitor, for appellant.

Peter Lassi, James L. Crawford, Pennsylvania Labor Relations Bd., Alaine S. Williams, William H. Haller, Willig, Williams & Davidson for American Federation of State, County and Municipal Employees and Dist. Council 84.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY, CASTILLE and MONTEMURO, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

This case poses the question of whether a city which establishes a revised pension plan applicable to new employees pursuant to the requirements of the Municipal Pension Plan Funding Standard and Recovery Act, ("Act 205"),[1] is required to enter into mandatory labor negotiations concerning the

1. Act of Dec. 18, 1984, P.L. 1005, No. 205, *as amended,* 53 P.S. § 895.101.

revised plan or whether it may establish its new pension plan upon consultation with the union.

The American Federation of State, County and Municipal Employees, District Council 84, AFL–CIO (AFSCME) is the exclusive representative of a bargaining unit of City of Pittsburgh employees. From January 1, 1986 to December 31, 1987, AFSCME and the city were parties to a collective bargaining agreement which stated that the labor contract was the total agreement between the parties, including wages, salaries, pensions and all fringe benefits, and that there was to be no change in the contract during its term except by mutual agreement.

In September of 1987 the city enacted an ordinance establishing a revised pension plan with reduced benefits for employees hired on or after January 1, 1988. The ordinance was enacted after the city elected to participate in the recovery program of Act 205, which provides for the reorganizing of financially distressed pension funds in order that the funds may become financially viable.

The purpose of Act 205 is to mandate actuarial funding for municipal pension plans and to establish a "recovery program for municipal pension systems determined to be financially distressed." Act 205, 53 P.S. § 895.101, note. In order to qualify for relief under the act, a municipality must first have its pension plans reviewed by a commission which is authorized to determine whether the plans are distressed and to classify the level of distress. The classifications are "minimal," "moderate" or "severe." The city's plan was determined to be severely distressed.

In order to avail itself of state financial assistance under Act 205, a municipality whose pension plan is severely distressed is required to employ a statutorily mandated recovery program designated as "Recovery Program Level III." 53 P.S. § 895.606. Pursuant to this program, the municipality *must*, inter alia, establish a revised pension benefit plan for newly hired employees which is less costly than the plan applicable

to current employees. 53 P.S. § 895.606(b)(2). As indicated above, the city enacted such a revised pension plan.

However, the city did not bargain with AFSCME concerning the revised pension benefit plan. Rather, the city participated in "meet and discuss" sessions with AFSCME.

On March 31, 1988, AFSCME filed a charge of unfair labor practices with the Pennsylvania Labor Relations Board (PLRB), alleging that the city had committed unfair labor practices in violation of the Public Employee Relations Act ("PERA")[2] in implementing a revised pension benefit plan without first entering into mandatory negotiations with the union. A hearing examiner issued a proposed decision on February 9, 1989, finding that the city did not commit an unfair labor practice. AFSCME filed exceptions, and PLRB sustained the exceptions, finding that the city's implementation of the revised pension benefit plan without bargaining was an unfair practice under PERA.

The city appealed to the Court of Common Pleas of Allegheny County, which on August 27, 1992 affirmed PLRB. The city then appealed to Commonwealth Court. On March 1, 1993, Commonwealth Court affirmed the lower court. This court granted allocatur in order to determine whether the lower courts were in error in holding that the city is required, on the facts of this case, to bargain with its union before establishing a revised pension benefit plan applicable to new employees.

The essential issues raised by the case are whether the provisions of Act 205 are in conflict with the provisions of PERA, and if there is a conflict, how it must be resolved.

Section 701 of PERA provides that employers have a mandatory duty to bargain "with respect to wages, hours, and other terms and conditions of employment." 43 P.S. § 1101.701. There is no disagreement that pensions are included within this mandated bargaining.

Section 702 of the PERA provides:

2. Act of July 23, 1970, P.L. 563, No. 195, 43 P.S. § 1101.101 et. seq.

Public employers shall not be required to bargain over matters of inherent managerial policy, which shall include but shall not be limited to such areas of discretion or policy as the functions and programs of the public employer, standards of services, its overall budget, utilization of technology, the organizational structure and selection and direction of personnel. Public employers, however, shall be required to meet and discuss on policy matters affecting wages, hours and terms and conditions of employment as well as the impact thereon upon request by public employee representatives.

43 P.S. § 1101.702.

Section 703 of the PERA provides:

The parties to the collective bargaining process shall not effect or implement a provision in a collective bargaining agreement if the implementation of that provision would be in violation of, or inconsistent with, or in conflict with any statute or statutes enacted by the General Assembly of the Commonwealth of Pennsylvania or the provisions of municipal home rule charters.

43 P.S. § 1101.703.

Act 205, on the other hand, provides, in pertinent part: Establishment of a revised benefit plan for newly hired municipal employees. The municipality may establish a revised benefit plan of the pension plan applicable to any employee first hired on or after the effective date of the instrument establishing the revised benefit plan.... *A revised benefit plan for newly hired municipal employees shall be developed with consultation with representatives of the collective bargaining unit applicable to the affected type of municipal employee, if any, and shall be within the scope of collective bargaining pursuant to the applicable law subsequent to the establishment of the revised benefit plan.*

53 P.S. § 895.607(e) (Emphasis added).

The city argued before Commonwealth Court that since Act 205 allows a participating municipality to establish a revised pension benefit plan without collective bargaining, establishing

the plan must be a matter of "inherent managerial policy," and therefore outside the requirement of mandatory negotiation.[3]

In rejecting the city's argument, Commonwealth Court stated that while establishing a revised pension benefit plan affects the city's budget, and while establishing a budget is a matter of inherent managerial policy (and therefore exempt from mandatory bargaining), establishing the revised plan is only one component of a much larger budget, and is not a matter of inherent managerial policy. As to the city's argument that Act 205 permits establishing the plan without bargaining, Commonwealth Court, relying on our decision in *PLRB v. State College*, 461 Pa. 494, 337 A.2d 262 (1975), held that although otherwise bargainable items might be excluded from bargaining if the legislature "explicitly and definitively" excluded them, Act 205 did not remove the city's new pension benefit plan from bargaining.[4]

 In *State College*, this court was called upon to interpret the then-recently-enacted PERA with respect to a number of matters which the school district-employer claimed were exempt from bargaining because they were inherently managerial under section 702. The union in *State College* claimed these matters were not exempt because they concerned wages, hours and other terms and conditions of employment under section 701. In that case, the legislature had offered no guidance as to whether the disputed matters were subject to bargaining or not, and we held:

3. The city's position is:
> this case does not present the question of distinguishing between mandatory and illegal subjects of bargaining but rather whether the legislature has directed that this is a subject over which bargaining is permissible but not mandatory.
City's brief at 21.

4. The portion of this court's *State College* opinion on which Commonwealth Court relies states:
> [I]tems bargainable under section 701 are only excluded under section 703 where other applicable statutory provisions *explicitly* and *definitively* prohibit the public employer from making an agreement as to that specific term or condition of employment.
461 Pa. at 510, 337 A.2d at 270. (Emphasis added.)

A determination of the interrelationship between sections 701 and 702 calls upon us to strike a balance wherein those matters relating directly to "wages, hours and other terms and conditions of employment" are made mandatory subjects of bargaining and reserving to management those areas that the public sector necessarily requires to be managerial functions.

461 Pa. at 506, 337 A.2d at 267–68. This balance is to be struck by the PLRB in the first instance, and the courts thereafter.

Based on our reading of the above-mentioned statutes and case law, we disagree with Commonwealth Court that the city must participate in mandatory negotiation with respect to the establishment of its revised pension benefit plan.

■ Reading section 607(e) of Act 205 in pari materia with section 702 of the PERA, we conclude that the city's decision to avail itself of the assistance offered by Act 205 is an inherently managerial decision. If it were not, section 607(e), requiring the establishment of a revised benefit plan, presumably would require negotiations so as not to be in conflict with the PERA. By allowing the city to establish a revised plan without mandating labor negotiations, the legislature has, in effect, brought this activity within the ambit of section 702 (inherent managerial activity).

We reject the view that because the city is not *required* to participate in the recovery program of Act 205, it is not required to participate in that portion of the recovery program which mandates changes in pension benefits for newly hired employees. Rather, we regard the legislative creation of the opportunity to participate as authority to participate fully, even when doing so expands, however slightly, the scope of inherently managerial activity.

PLRB and the lower courts were in error in holding that such mandatory activity was not "inherently managerial" pursuant to section 702 of the PLRA.[5]

5. PLRB argues that in *Philadelphia v. District Council 33, AFSCME,* 528 Pa. 355, 598 A.2d 256 (1991), this court rejected the argument that

For the foregoing reasons, the order of Commonwealth Court was in error. Order of Commonwealth Court is reversed.

ZAPPALA, J., files a concurring opinion.

MONTEMURO, J., files a concurring opinion which is joined by CAPPY, J.

PAPADAKOS, J., files a dissenting opinion.

MONTEMURO, J., is sitting by designation.

ZAPPALA, Justice, concurring.

I concur solely in the result reached by the majority. One does not need to look beyond the clear and unambiguous language of Act 205 to conclude that municipalities have the authority to establish a revised benefit plan for newly hired employees without engaging in collective bargaining. Act 205 provides in pertinent part as follows:

> ... The municipality may establish a revised benefit plan of the pension plan applicable to any employee first hired on or after the effective date of the instrument establishing the revised benefit plan.... A revised benefit plan for newly hired municipal employees shall be developed *with consultation with* representatives of the collective bargaining unit applicable to the affected type of municipal employee, if any, and shall be within the scope of *collective bargaining* pursuant to the applicable law *subsequent* to the establishment of the revised benefit plan.

53 P.S. § 895.607(e).

This section expresses a clear legislative intent to require collective bargaining *after* the implementation of the revised

a public employer could use the provisions of Act 205 to excuse its unilateral adoption of a revised pension plan. In that case, the employer had been preliminarily enjoined from altering its pension plan, which was controlled by the terms of an existing labor contract, and in reviewing the propriety of the preliminary injunction, a majority of this court held that the union was likely to prevail on the merits of the case because the employer improperly breached its contract.

*Philadelphia v. District Council 33* has no application to this case because here the collective bargaining agreement had expired when the city implemented the revised benefit plan.

pension benefit plan. To establish the initial revised benefit plan, however, the City is only required to engage in "consultation with the representatives of the collective bargaining unit." Mandating collective bargaining for the establishment of a revised plan would render the last phrase of the section mere surplusage. We presume that the General Assembly intends the entire statute to be effective and certain. 1 Pa.C.S. § 1922(a). Thus, on the basis of the language of Act 205 alone, the City was authorized to implement the revised plan since it met with AFSCME representatives prior to the plan's adoption.

We must keep in mind that the purpose of Act 205 was to establish a recovery program for municipal pension systems determined to be financially distressed. Although pensions are generally bargainable, the legislature drafted Act 205 to remove the implementation of a revised financially distressed pension plan from the bargaining table.

In sum, I would reverse the order of the Commonwealth Court solely on the basis of the language of Act 205.

MONTEMURO, Justice, concurring.

I concur in the result reached by the Majority, but write to emphasize my belief that our decision carves out a narrow exception to the general rule that pensions are mandatory subjects of bargaining under the Public Employee Relations Act (PERA) [1].

Today we are confronted with reconciling two conflicting statutes, section 701 of PERA and section 607 of the Municipal Pension Plan Funding Standard and Recovery Act (Act 205) [2], both of which affect collective bargaining over public employee pension benefits. Section 701 of PERA imposes an obligation to bargain in good faith over "wages, hours, and other terms and conditions of employment." 43 Pa.C.S. 1101.701. Courts

1. Public Employee Relations Act of 1970, P.L. 563, No. 195 (1970) (codified at 43 Pa.S. § 1101.101–1101.2301)

2. Municipal Pension Plan Funding Standard and Recovery Act of 1984, P.L. 1005, No. 205 (1984) (as amended by 53 Pa.C.S. § 895.101– 895.803 (Purdon Supp.1994))

have long held that pension benefits are "terms and conditions of employment" subject to bargaining under section 701. *See, e.g., Appeal of Rose Tree Media School District,* 48 Pa. Commw. 368, 409 A.2d 1374 (1980); *Pennsylvania State Education Association v. Baldwin Whitehall School District,* 30 Pa.Commw. 149, 372 A.2d 960 (1977). Thus, it is clear that the City of Pittsburgh had a duty under PERA to bargain with District Council 89 over the revised benefit plan as retirement benefits are a mandatory subject of bargaining.

In contrast, section 607 of Act 205 allows a municipality to implement a benefit plan for newly hired municipal employees with the "consultation" of the employees' collective bargaining unit. This section clearly and unambiguously states that the benefits of newly hired employees shall be in the scope of collective bargaining subsequent to the establishment of the revised benefit plan. Thus, I agree with the Concurring Opinion of Mr. Justice Zappala that the plain language of Act 205 allows a municipality to implement a revised pension plan after only consulting with the employees' representative. However, I disagree with Mr. Justice Zappala that the analysis ends with the unambiguous language of Act 205. Section 701 of PERA and Act 205 are clearly in conflict. Under our canons of statutory interpretation, whenever the provisions of two or more statutes are irreconcilable, the latest statute prevails. *See* 1 Pa.C.S. § 1936. In the instant case, Act 205 would prevail as it is the more recent of the two statutes. However, I believe that it is unnecessary to hold that Act 205 repealed the mandatory bargaining provisions of section 701 of PERA. I agree with the Majority that these two statutes can be reconciled by finding that a municipality's decision to avail itself of Act 205 is an "inherent management decision" under section 702 PERA.

I write separately today for two reasons. First, I believe that the Majority fails to set forth and apply the proper standard of review for a decision of the Labor Relations Board. Second, I believe that the Majority fails to limit its decision properly to carve out only a narrow exception to the

rule that retirement benefits are a mandatory subject of bargaining.

It is well settled that a decision of the Labor Relations Board must be upheld if the Board's findings are supported by substantial evidence, and if conclusions of law drawn from those facts are reasonable, not capricious, arbitrary or illegal. *Joint Bargaining Committee of Pennsylvania Social Services Union v. PLRB*, 503 Pa. 236, 241, 469 A.2d 150, 152 (1983); *Commonwealth v. PLRB*, 502 Pa. 7, 11, 463 A.2d 409, 411 (1983). In the instant case, I believe that deference to the final order of the PLRB is unwarranted because the conclusions of law contained therein are plainly erroneous. The PLRB found that the words "consultation", "collective bargaining" and "establishment" were undefined in Act 205, and were, therefore, ambiguous. The PLRB then interpreted Act 205 by referring to sources outside the Act. I believe that the PLRB committed an error of law in finding Act 205 ambiguous. The language of a statute must be construed according to common and approved usage. *Commonwealth v. Hill*, 481 Pa. 37, 42 n. 6, 391 A.2d 1303, 1306 n. 6 (1978); *Odd Fellows Home of Pennsylvania v. Dept. of Public Welfare*, 56 Pa. Commw. 115, 119, 424 A.2d 961, 964 (1981). Thus, although the terms "consultation", "collective bargaining", and "establishment" are undefined, they are unambiguous as each has a common and approved usage. Accordingly, I find the PLRB's interpretation of Act 205, and the Board's resolution of this case which flows from this interpretation, to be unreasonable.

As recognized by the Majority, section 702 of PERA provides an exception to the general rule established by section 701 that wages, hours and terms of employment are mandatory subjects of bargaining. Section 702 states that "[p]ublic employers shall not be required to bargain over matters of inherent managerial policy ..." 43 Pa.S. § 1101.702. The Majority also correctly recognizes that the determination of whether a particular matter falls within the scope of section 702 rather than section 701 is determined by applying the balancing test established by this Court in *Pennsylvania Labor Relations Board v. State College Area School District*,

461 Pa. 494, 337 A.2d 262 (1975). In *State College* we held that where an item of dispute is a matter of fundamental concern to the employees' interest in wages, hours and other terms of employment "[i]t is the duty of the PLRB in the first instance and the courts thereafter to determine whether the impact of the issues on the interest of the employe in wages, hours and terms and conditions of employment outweighs its probable effect on the basic policy of the system as a whole." *State College,* 461 Pa. at 507, 337 A.2d at 268. The Majority strikes such a balance, but offers scant reasoning as to how it arrives at this balance.

As required by *State College,* we must examine the employees' interest in wages, hours and terms and conditions of employment. I believe that pensions and retirement benefits are at the heart of "wages, hours and terms and conditions of employment," and, therefore, employees have a strong interest in collective bargaining over these matters. As discussed *supra,* courts of this Commonwealth have consistently held that retirement benefits are mandatory subjects of bargaining under PERA. I believe that only in the rarest of circumstances will an employer have an interest in the "basic policy of the system as a whole" sufficiently strong to tilt the balance in favor of making a pension-related decision an "inherent management decision" under section 702 of PERA. In my opinion, the instant situation is such a rare case. Act 205 was established as "a recovery program for municipal pension systems determined to be financially distressed." Municipal Pension Plan Funding Standard and Recovery Act of 1984, P.L. 1005, No. 205 (1984) (Preamble). In the present case, the City of Pittsburgh elected to utilize Program Level III which is reserved for "severely distressed municipal pension systems." *See* 53 Pa.S. § 895.604. The establishment of a revised benefit plan is a mandatory remedy under the Act for all municipalities availing themselves of Recovery Program Level III. I believe that the City's interest in rescuing its distressed pension system outweighs the interest of the employees, albeit strong, in collectively bargaining over the implementation of a revised benefit plan. For this reason, I

agree that the City's decision to invoke section 205 is an "inherent management decision" under section 702 outside the scope of mandatory bargaining required by section 701.

Of course, a municipality's ability to avail itself of Act 205 is necessarily limited by our decision in *Philadelphia v. District Council 33,* 528 Pa. 355, 598 A.2d 256 (1991). In *District Council 33,* a municipality, pursuant to Act 205, attempted to establish a revised benefit plan which altered the pension plan in effect under the collective bargaining agreement. We refused to allow the municipality to adopt the revised plan holding that "[o]nce the matter is included in a collective bargaining agreement, it becomes, like any other contractual provision, binding on the parties to the agreement." *District Council 33,* 528 Pa. at 362, 598 A.2d at 259–60 (citations omitted). In the instant case, the City of Pittsburgh enacted an ordinance establishing a revised benefit plan pursuant to Act 205 in September of 1987 while negotiating with the union for a successor collective bargaining agreement. The collective bargaining agreement expired on December 31, 1987, and the revised benefit plan was to go in effect on January 1, 1988. The City refused to bargain over the revised plan and the instant unfair labor practice complaint followed. Thus, I agree with the Majority that the instant case is distinguished from *District Council 33* because the City was not attempting to abrogate a collective bargaining agreement, but merely adopted a revised benefit plan after the expiration of a previously negotiated agreement. *District Council 33* is properly limited to the proposition that a municipality may not abrogate an existing collective bargaining agreement by unilaterally imposing a revised benefit plan under Act 205. However, once a collective bargaining agreement has expired, the municipality may avail itself of Act 205 and unilaterally adopt a revised benefit plan without collective bargaining as an "inherent management decision."

For the reasons set forth above, I concur in the result reached by the Majority.

CAPPY, J., joins in this concurring opinion.

PAPADAKOS, Justice, dissenting.

I dissent and would affirm the Commonwealth Court on the basis of its sound opinion.