**GREATER NANTICOKE AREA EDUCATION ASSOCIATION**

v.

**GREATER NANTICOKE AREA SCHOOL DISTRICT, Appellant**

**Northwest Area Education Association**

v.

**Northwest Area School District, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Oct. 30, 2007.

Decided Dec. 18, 2007.

John G. Dean and Joseph J. Joyce, III, Scranton and Richard B. Galtman, New Britain, for appellants.

John G. Audi, Wilkes–Barre, for appellees.

BEFORE: FRIEDMAN, Judge, and SIMPSON, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge SIMPSON.

These consolidated appeals raise a single issue: whether the Luzerne County Court of Common Pleas (trial court) had reasonable grounds to issue preliminary injunctions in favor of the Greater Nanticoke Area Education Association and the Northwest Area Education Association (collectively, Associations).[1] By separate orders, the trial court enjoined the Greater Nanticoke Area School District and the Northwest Area School District (collectively, School Districts) from withdrawing from a 1999 Agreement and Declaration of Trust Establishing the Northeast Pennsylvania School Districts Health Trust (Trust). The primary purpose of the Trust is to obtain healthcare benefits for its beneficiaries. Enjoining School Districts' from withdrawing from the Trust, the trial court found School Districts' actions presented immediate and irreparable harm to Associations' bargaining power.

Also at this time we consider Associations' motion to quash School Districts' appeals. Associations contend the preliminary injunctions are not final appealable orders pursuant to Pa. R.A.P. 341.[2]

---

1. By order of July 10, 2007, we consolidated the appeals.

2. Pa. R.A.P. 341, provides:

After careful review, we affirm the trial court's orders issuing preliminary injunctions in favor of Associations and deny Associations' motion to quash. We further remand this matter to the trial court for a permanent injunction hearing.

## I.

By way of brief background, 14 school districts and their labor organizations entered into the Trust in 1999. Reproduced Record (R.R.) at 79a–114a. The Trust's primary objective is to purchase healthcare benefits at reasonable costs for its beneficiaries. *Id.* at 80a. For our purposes, it is important to note each participating school district and labor organization is represented by a designated Trustee, and each Trustee has one vote. *Id.* at 90a–92a. A majority vote is required for most actions; however, certain actions require a supermajority, or two-thirds vote, for approval. *Id.* These actions include: a change in any provision of the Trust; a change or modification to any program or plan of benefits; and, a change in the identity of any insurance carrier. *Id.*

Particularly relevant here is Section 5.4 of the Trust. It provides, in pertinent part:

Section 5.4 WITHDRAWAL OF PUBLIC SCHOOL ENTITY OR LABOR ORGANIZATION FROM PARTICIPATION IN THE TRUST

(a) Any public school entity party to this [Trust] may withdraw from the Trust ... provided:

(1) on or before June 30, (the "Notice date"), it provides written notice to the Trustees of its intention to withdraw from the Trust ... which withdrawal shall become effective no earlier than twelve (12) months after the aforesaid June 30 "Notice date";

. . .

(3) the withdrawing public school entity takes such actions as are necessary to prevent a termination or lapse of coverage for the Participants in the Trust ... who are employees of the withdrawing public school entity and their Beneficiaries and dependents whose coverage under the Plan will be terminated as a result of the public school entity's withdrawal from the Trust ... including provisions for securing of a waiver or avoidance of any exclusions from post-withdrawal coverage based [on] a claim of pre-existing illness or injury; and

(b) nothing in this Section 5.4 is intended to waive or otherwise render inapplicable any duty to bargain imposed upon any public school entity which is party to this [Trust] with respect to the issue of withdrawal from the Trust ... or to impair any contract provision which requires that the public school entity remain a member of the [Trust].

(c) Nothing in this Trust ... shall be construed to authorize or permit any public school entity to violate its Collective Bargaining Agreement or to unilat-

(a) **General rule.** Except as prescribed in subdivisions (d), and (e) of this rule, an appeal may be taken as of right from any final order of an administrative agency or lower court.

(b) **Definition of final order.** A final order is any order that:

(1) disposes of all claims and of all parties; or

(2) is expressly defined as a final order by statute; or

(3) is entered as a final order pursuant to subdivision (c) of this rule.

Subdivisions (c), (d), and (e) are not applicable here.

erally modify any aspect of the health benefits provided for therein. *Id.* at 104a–06a. Pursuant to this Section, School Districts timely notified the Trustees of their intention to withdraw from the Trust as of June 30, 2007. *Id.* at 119a–20a.

Two days before the effective withdrawal date, Associations *and* School Districts appeared before the trial court. Associations presented the trial court with two substantially similar equity complaints. The complaints include averments that Associations and School Districts are parties to expired collective bargaining agreements (CBA) and no successor agreements have been reached. *Id.* at 5a, 11a. Each CBA requires School Districts to provide their member employees with healthcare coverage.[3]

According to further averments, School Districts and Associations are parties to the Trust; however, School Districts voted to withdraw from the Trust without bargaining with Associations prior to voting. In addition, School Districts failed to present Associations with an alternative to the Trust from which Associations may determine the equivalency of the healthcare benefits. Thus, School Districts violated their respective CBAs. Also of import, Associations averred they filed unfair labor practice charges with the Pennsylvania Labor Relations Board (PLRB).

Characterizing their applications as *ex parte,* or without notice to School Districts, Associations requested preliminary injunctions enjoining School Districts from withdrawing from the Trust. To support their applications, Associations averred School Districts' withdrawal from the Trust would cause immediate and irreparable harm by disrupting the labor peace and status quo, and would result in greater injury to Associations than that which would result to School Districts if enjoined from withdrawing. Finally, Associations averred they have a clear right to pursue their administrative remedies with the PLRB.

Relying heavily on our decision in *Frackville Borough Police Department v. Pennsylvania Labor Relations Board,* 701 A.2d 632 (Pa.Cmwlth.1997), School Districts opposed Associations' applications. They argued withdrawal from the Trust was not subject to mandatory collective bargaining because School Districts propose only a change in brokers. Under *Frackville,* a change in brokers is a managerial function not subject to mandatory collective bargaining.

School Districts further asserted that the proposed brokerage change will not affect the current level of healthcare benefits. They identified Elite Brokerage Services as the designated broker. R.R. at 196a. To support their contention a change in brokers will not affect the current level of benefits, School Districts attached to their trial court brief an affidavit of Elite's vice-president attesting that the Associations' healthcare benefits will not be altered. R.R. at 210a–11a. As further support, School Districts attached several e-mails from Elite employees to unidentified individuals indicating the same. R.R. at 197a–200a.

---

**3.** More specifically, the Greater Nanticoke Area School District CBA requires the school board to provide its employees and their dependents a health insurance plan consisting of Blue Cross/Blue Shield Prevailing Fee 100 Plan X *or its equivalent,* with the association making the determination of equivalency. R.R. at 134a. The CBA was effective September 1, 1998 through August 31, 2005.

Similarly, the Northwest Area School District CBA requires the school district to provide association members and their dependents with Blue Cross/Blue Shield/Major Medical *or its equivalent.* R.R. 166a. The CBA was effective September 1, 2000 through August 31, 2005.

Executing orders Associations supplied, the trial court issued two nearly identical orders on June 28, 2007. The orders, concluding School Districts' actions would cause immediate and irreparable harm to Associations' bargaining power, enjoined School Districts from unilaterally withdrawing from the Trust. The trial court also set a hearing for the next day. School Districts, however, filed an appeal with this Court within hours of the trial court's orders. Consequently, the trial court declined to hold the hearing.

## II.

At the onset of this appeal, Associations filed a motion to quash School Districts'

appeals on the ground the trial court's orders do not finally resolve the cases.[4] As such, the trial court's orders are not final appealable orders pursuant to Pa. R.A.P. 341. Claiming that the preliminary injunctions here are equivalent to non-appealable temporary restraining orders,[5] Associations assert Pa. R.A.P. 311, governing interlocutory appeals as of right, is not applicable.

■ Initially, we note, Pennsylvania does not recognize temporary restraining orders. *Bloomingdale's by Mail Ltd. v. Dep't of Revenue*, 513 Pa. 149, 153, 518 A.2d 1203, 1205 n. 3 (1986); *E. Strouds-*

4. Associations also filed a motion to dismiss the appeals as moot, alleging School Districts committed themselves to remain in the Trust until June 2008. Associations attached to their motion School Districts' June 2007 letters to the Trustees indicating their intention to withdraw in June 2008. As a result, Associations claim no immediate and irreparable harm. Opposing the motion, School Districts aver the 2007 withdrawal notices do not repudiate their 2006 notices, and are necessary to comply with the Trust's notice provisions for withdrawal in 2008. School Districts' answer suggests they will immediately withdraw from the Trust if the preliminary injunctions are dissolved, having given timely notice in 2006 of their intention to withdraw after June 30, 2007. In addition, we note this situation is capable of repetition yet evading review until the PLRB rules on Associations' unfair labor practice charges. Under these circumstances, the matter is not moot. *In re Canvass of Absentee Ballots of November 4, 2003 Gen. Election*, 577 Pa. 231, 843 A.2d 1223 (2004).

In response, School Districts filed two motions of their own. In the first motion, School Districts moved to strike from Associations' motion to dismiss the 2007 withdrawal notices on the ground these documents are not part of the original record. *See* Pa. R.A.P. 1921. We agree the exhibits should be stricken from Associations' motion to dismiss. *McCaffrey v. Pittsburgh Athletic Ass'n*, 448 Pa. 151, 293 A.2d 51 (1972) (appellate court is confined to record before it, excluding matters of facts asserted in briefs).

In their second motion, School Districts seek sanctions in the nature of attorney's fees for preparing the motion to strike. We deny School Districts' request. Associations filed their motion to dismiss based solely on the belief School Districts committed to remaining in the Trust until June 2008. Assuming they no longer were immediately and irreparably harmed, Associations merely exhibited candor toward the Court regarding their burden of proof. *Cf.* Pa. R.A.P. 2744 (counsel fees may be awarded where conduct of the party against whom costs are imposed is dilatory, obdurate or vexatious).

5. *See Nutrasweet Co. v. Vit–Mar Enters., Inc.*, 112 F.3d 689 (3d Cir.1997) and *Vuitton v. White*, 945 F.2d 569 (3d Cir.1991) (the short lived nature of temporary restraining orders ensures prompt merits review on the request for injunctive relief, which is then subject to immediate appellate review under 28 U.S.C. § 1292(a)(1)). Section 1292(a)(1) is similar to our Pa. R.A.P. 311(a)(4). It provides the circuit courts of appeal with jurisdiction to hear appeals from interlocutory orders of the district courts granting, continuing, modifying, refusing, or dissolving injunctions, or refusing to dissolve or modify injunctions. Rule 311(a)(4), below, is nearly identical. For clarity, we note Pa. R.A.P. 311 does not distinguish between injunctions issued with notice to the opposing party and those issued without. Under either procedure, our Rules grant an appeal as of right. *Id.*

*burg Univ. v. Hubbard,* 140 Pa.Cmwlth. 131, 591 A.2d 1181 (Pa.Cmwlth.1991). Our functional equivalent is the preliminary injunction granted without notice to the adverse party. *Bloomingdale's by Mail Ltd.*

█ Notwithstanding Associations' characterization, the trial court did not grant the preliminary injunctions without notice to School Districts, and Associations' analogy to federal temporary restraining orders disregards our Rules of Civil Procedure.[6] More specifically, Rule 1531(a) provides, with added emphasis:

> A court shall issue a preliminary or special injunction only after written notice and hearing *unless it appears to the satisfaction of the court that immediate and irreparable injury will be sustained before notice can be given or a hearing held, in which case the court may issue a preliminary or special injunction without a hearing or without notice.* In determining whether a preliminary or special injunction should be granted and whether notice or a hearing should be required, the court may act on the basis of the averments of the pleadings or petition and may consider affidavits of parties or third persons or any other proof which the court may require.

As the Rule imparts, a court may issue a preliminary injunction only after written notice and a hearing; however, an exception is made where the trial court finds the applicant will suffer immediate and irreparable injury "before notice can be given or a hearing held." *Id.; cf. Com. ex. rel. Davis v. Van Emberg,* 464 Pa. 618, 347

A.2d 712 (1975) (where party failed to demonstrate immediate and irreparable harm, preliminary injunction invalid in absence of notice and hearing); *In re D.G., Jr.,* 894 A.2d 1290 (Pa.Super.2006) (same); 15 *Standard Pennsylvania Practice* § 83.359 (2005 ed.).

. Applying Pa. R.C.P. No. 1531(a) here, the trial court had authority to issue the preliminary injunctions where it appeared to the court's satisfaction that Associations would suffer immediate and irreparable injury before a full hearing could be held. Based on Associations' averments, the trial court determined School Districts' withdrawal from the Trust posed immediate and irreparable injury to Associations' collective bargaining power. Trial Ct. Order, 6/28/07. This is consistent with the rule of procedure.

Because the trial court granted an injunction in a procedure authorized by rule, Appellate Rule 311(a)(4) affords School Districts an appeal as of right. In particular, Pa. R.A.P. 311(a)(4) provides, with added emphasis:

> *An appeal may be taken as of right* and without reference to Pa. R.A.P. 341(c) from:
>
> . . .
>
> (4) *Injunctions. An order granting,* continuing, modifying, refusing or dissolving *injunctions,* or refusing to dissolve or modify injunctions. . . .

Thus, the clear language of Pa. R.A.P. 311(a)(4) grants School Districts the right of an immediate appeal.

**6.** Associations conceded at oral argument School Districts appeared before the trial court in opposition to their applications for preliminary injunctions. *See also* R.R. at 1a–2a (trial court dockets); 54a–212a (School Districts' brief in opposition). If the trial court truly issued the preliminary injunctions without notice to School Districts, we would expect School Districts to move for dissolu-

tion pursuant to Pa. R.C.P. No. 1531(d). That Rule provides a preliminary injunction issued without notice automatically dissolves if a hearing is not held within five days of issuance. The trial court dockets do not indicate that motions to dissolve were filed at any time in the 38 days after the trial court granted the injunctions and before it transmitted the record to this Court. R.R. at 1a–2a.

It is of no consequence the trial court declined to hold the later scheduled hearing. Any further proceedings were limited to ascertaining whether to dissolve, continue or modify the existing injunction. Pa. R.C.P. No. 1531(e); *Petro v. Kennedy Twp. Bd. of Comm'rs,* 49 Pa.Cmwlth. 305, 411 A.2d 849 (1980); *cf. Franklin Decorators, Inc. v. Hende–Jon Furniture Showrooms, Inc.,* 339 Pa.Super. 449, 489 A.2d 246 (1985) (trial court has discretion to grant an evidentiary hearing on application for preliminary injunction). Although the trial court could have proceeded with the scheduled hearing, it was not required to do so. Pa. R.A.P. 311(h) (providing that Pa. R.A.P. 1701(a), relating to effect of appeal generally, is not applicable to interlocutory appeals under Pa. R.A.P 311(a)(4)); 15 *Standard Pennsylvania Practice* § 83.361 (2005 ed.).

In sum, as School Districts' appeals are properly before us, we deny Associations' motion to quash.

### III.

■ We now turn to the merits of School Districts' appeals. School Districts contend the trial court lacked reasonable grounds to issue orders enjoining their withdrawal from the Trust. We disagree for several reasons.

■ Initially, "[a] preliminary injunction is designed to preserve the subject of the controversy in the condition in which it is when the order is made, it is not to subvert, but to maintain the existing status quo until the legality of the challenged conduct can be determined on the merits." *Sheridan Broad. Networks, Inc. v. NBN Broad., Inc.,* 693 A.2d 989, 994 (Pa.Super.1997) (quoting *In re Appeal of Little Britain,* 651 A.2d 606, 611 (Pa.Cmwlth. 1994)). There is, however, a distinction between mandatory and prohibitory injunctions. Mandatory injunctions command the performance of some positive act to preserve the status quo, and prohibitory injunctions enjoin a party from doing an act that will change it. *Mazzie v. Commonwealth,* 495 Pa. 128, 432 A.2d 985 (1981). As here, where the injunction at issue is merely prohibitory, we do not review the merits of the controversy but only determine if there are any reasonable grounds to support the trial court's action. *Id.* If no such grounds exist, only then will we reverse. *Id.; Summit Towne Centre, Inc. v. Shoe Show of Rocky Mount, Inc.,* 573 Pa. 637, 828 A.2d 995 (2003) (an appellate court reviews an order granting or refusing a preliminary injunction for an abuse of discretion).

■ In ruling on a preliminary injunction request, a trial court has "reasonable grounds" to grant relief where it finds all the essential prerequisites for a preliminary injunction are satisfied. There are six essential prerequisites a party must establish prior to obtaining preliminary injunctive relief:

1) that the injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages;

2) that greater injury would result from refusing an injunction than from granting it, and, concomitantly, that issuance of an injunction will not substantially harm other interested parties in the proceedings;

3) that a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct;

4) that the activity it seeks to restrain is actionable, that its right to relief is clear, and that the wrong is manifest, or, in other words, must show that it is like to prevail on the merits;

5) that the injunction it seeks is reasonably suited to abate the offending activity; and,

6) that a preliminary injunction will not adversely affect the public interest.

*Warehime v. Warehime,* 580 Pa. 201, 209–10, 860 A.2d 41, 46–47 (2004) (quoting *Summit Towne Centre, Inc.,* 573 Pa. at 646–47, 828 A.2d at 1001).

Here, School Districts rely on *Frackville* to refute each element of Associations' burden of proof. In that case, we summarily affirmed the PLRB's conclusion the employer's unilateral change in banking institutions to administer police pension funds was a managerial policy not subject to mandatory collective bargaining.

Unlike *Frackville,* however, the PLRB has yet to address this matter. As such, we find instructive the Third Circuit Court of Appeals' decision in *International Union, United Automobile, Aerospace & Agricultural Implement Workers of America, UAW v. Mack Trucks, Inc.,* 820 F.2d 91 (3d Cir.1987). There, the parties' CBA identified Blue Cross/Blue Shield as the health insurance carrier. While negotiating for healthcare benefits, the parties agreed Blue Cross/Blue Shield would supply benefits for the unexpired term of the CBA. In addition, the parties amended the CBA to provide the employer would not exercise its option to select an alternate delivery system for benefits until they reached an agreement on the terms and conditions of a new healthcare benefits package.

The employer subsequently informed the union of its selection of another delivery system. The union filed a grievance, maintaining the employer agreed not to change delivery systems until the parties settled on a new benefits package. In response, the employer claimed the health-care benefits would not be affected by a change in delivery systems.

The union filed an equity complaint and a motion for a preliminary injunction with the Eastern District Court of Pennsylvania. Concluding the union established the employer technically violated the parties' amendment to the CBA, the District Court nevertheless found the union failed to show any substantial harm resulting from a change in delivery systems. Finding no injury, the District Court entered a directed verdict in favor of the employer.

On appeal, the Third Circuit found error in the District Court's ruling. It reasoned that the amended CBA forced the employer to bargain over the scope of its benefits package before changing carriers. By violating the amendment, the employer deprived the union of a bargaining chip. This was a substantive, not technical, violation of the CBA. Accordingly, the Third Circuit vacated the District Court's directed verdict, and remanded the matter for further proceedings.

At a minimum, *International Union* demonstrates that where the issue was to be bargained, an employer's unilateral change in a healthcare delivery system during a period of contract negotiations may harm a union. Thus, an injunction may be justified.

Unlike the contract language in *International Union,* the relevant documents here do not clearly indicate whether a change in healthcare brokers is subject to mandatory collective bargaining. *See* R.R. at 79a–114a; 123a–190a. In the usual course, the PLRB is called upon in the first instance to determine whether an issue pertains directly to hours, wages, and other terms and conditions of employment, or is reserved to an employer as part of its managerial functions. *See* Sections 701 and 702

of the Public Employe Relations Act;[7] *City of Pittsburgh v. Pa. Labor Relations Bd.*, 539 Pa. 535, 653 A.2d 1210 (1995); *Mazzie; Pa. Labor Relations Bd. v. State College Area Sch. Dist.*, 461 Pa. 494, 337 A.2d 262 (1975).

Here, Associations averred they filed unfair labor practice charges with the PLRB averring School Districts' violated their respective CBAs by voting to withdraw from the Trust without bargaining. R.R. at 5a; 12a; 203a; 205a. Because of the need for an initial determination by the PLRB, the trial court did not abuse its discretion in issuing the preliminary injunctions. *Mazzie* (affirming Commonwealth Court's issuance of preliminary injunction where union simultaneously pursued administrative remedies with PLRB).

Moreover, the trial court did not abuse its discretion in granting the preliminary injunction in anticipation of a full hearing the next day. Certain factual issues may arise from a change in medical insurance brokers.

Under common law contract principles, performance of a contract may usually be delegated to another unless delegation is contrary to public policy or the terms of the contract. RESTATEMENT (SECOND) OF CONTRACTS, § 318(1) (1981). "Unless otherwise agreed, a promise requires performance by a particular person only to the extent that the obligee has a substantial interest in having that person perform or control the acts promised." *Id.* at § 318(2); *Cf. Smith v. Cumberland Group, Ltd.*, 455 Pa.Super. 276, 687 A.2d 1167 (1997) (acknowledging that absent express contractual provision, contract which does not involve personal skill, trust, or confidence may be assigned without consent of other party).

As explained above, Associations have two members designated as Trustees of the Trust. Trustees are the persons "actually responsible for the control, disposition, or management of the money received and contributed...." R.R. at 88a. In other words, Associations' designees share control in how the Trust is managed and, ultimately, the selection of healthcare benefits. Associations may therefore have a substantial interest in this particular entity performing School Districts' duty to provide healthcare benefits. Such a substantial interest could preclude delegation of the brokerage function to another entity. This factual issue invites maintenance of the status quo until a full hearing can be held. Accordingly, we discern no abuse of discretion.

Finally, we conclude that because some basis exists to satisfy all the prerequisites for a preliminary injunction, no abuse of discretion is apparent. First, the trial court found Associations would suffer immediate and irreparable injury in that School Districts' actions "severely damaged" Associations' bargaining power. Trial Ct. Order, 6/28/07. As recognized in *International Union*, the loss of bargaining power during a period of contract negotiations can be immediate and irreparable injury. Under Pa. R.C.P. No. 1531(a), this finding was sufficient to preliminarily enjoin School Districts from withdrawing from the Trust.

---

7. Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §§ 1101.701, 1101.702. Generally, Section 701 requires a public employer to bargain in good faith with respect to wages, hours and other terms and conditions of employment. Section 702 relieves public employers from a duty to bargain over matters of inherent managerial policy, such as the functions and programs of employer, standards of service, budgetary matters, utilization of technology, organizational structure, and selection and direction of personnel.

Second, Associations also aver School Districts' withdrawal from the Trust would result in greater injury to Associations than would result to School Districts if enjoined. Assuming the issue is a mandatory subject of collective bargaining, disruption of labor peace satisfies the greater injury requirement. *Pa. Labor Relations Bd. v. Williamsport Area Sch. Dist.*, 486 Pa. 375, 406 A.2d 329 (1979) (unilateral changes in terms and conditions of employment while negotiating new CBA changed status quo, which did not foster labor peace). In addition, the preliminary injunctions here maintain the status quo as it existed prior to School Districts' attempt to unilaterally withdraw from the Trust.

Third, Associations allege they have a clear right to seek their administrative remedies before the PRLB. R.R. at 6a; 12a. In *Mazzie*, the Commonwealth adopted a new Code of Conduct requiring certain state employees to make financial disclosures. The affected employees contested enforcement of the Code of Conduct, alleging it violated the applicable CBA. The union filed an unfair labor practice charge with the PLRB, and the employees sought an injunction against the Commonwealth prohibiting it from enforcing the Code of Conduct. In affirming our grant of a preliminary injunction, the Supreme Court stated:

> [W]hile the [Commonwealth] Court refrained from ruling on petitioners' right to relief on the merits, it determined that petitioners have a clear procedural right to pursue their administrative remedies before being required to comply with the [Code of Conduct's] financial disclosure requirements and that, in the meantime, the grant of a prohibitory preliminary injunction was necessary to preserve petitioners' privacy right claim.
>
> . . .

In our view the threshold issue of whether the Code of Conduct is a matter of inherent managerial policy or is a new term and condition of employment should be determined in the first instance by the PLRB and the arbitrator. Pennsylvania labor policy not only prefers but requires the submission to arbitration of public employee grievances arising out of the interpretation of collective bargaining agreements.

. . .

We are, therefore, in accord with the Commonwealth Court's decision which permits petitioners to exhaust their administrative remedies without filing financial disclosure forms.

*Id.* at 136–138, 432 A.2d at 989–90.

Applying *Mazzie* here, Associations filed unfair labor practice charges against School Districts with the PLRB. R.R. at 202a–07a. As noted above, the PLRB should determine in the first instance whether withdrawal from the Trust is subject to mandatory collective bargaining. 43 P.S. §§ 1101.701, 1101.702; *City of Pittsburgh; Mazzie; State College Area Sch. Dist.*

Finally, we note, "the party seeking an injunction need not prove the merits of the underlying claim, but need only show that substantial legal questions must be resolved to determine the rights of the respective parties." *Chmura v. Deegan*, 398 Pa.Super. 532, 581 A.2d 592, 593 (1990). Here, the substantial legal question is whether the identity of the medical benefits broker is a mandatory subject of collective bargaining.

For these reasons, we conclude the trial court had reasonable grounds upon which to preliminarily enjoin School Districts from withdrawing from the Trust until a full hearing could be held. Accordingly, we affirm. This matter is remanded to the

trial court for a permanent injunction hearing.

### ORDER

AND NOW, this 18th day of December, 2007, the orders of Luzerne County Court of Common Pleas, dated June 28, 2007, are hereby **AFFIRMED.** This matter is **RE-MANDED** to the Court for a permanent injunction hearing.

Consistent with the foregoing opinion, Appellees' Greater Nanticoke Area Education Association and Northwest Area Education Association Motions to Dismiss and Quash are **DENIED.** Appellants' Greater Nanticoke Area School District and Northwest Area School District Motion to Strike is **GRANTED.** Appellants' Motion for Sanctions is **DENIED.**

Jurisdiction is relinquished.