**Joy v. Cutler Group, Inc.**

C.P. of Chester County, No. 2012-03689-CT

*Jennifer M. Horn* and *Kathleen J. Seligman*, for plaintiffs.

*Joseph P. Walsh*, for defendants.

TUNNELL, *J.*, Nov. 10, 2014—

## ORDER

And now, this 10th day of November, 2014, upon consideration of "Defendants' Motion for Summary Judgment to Dismiss All Claims of the Remote Purchasers," Plaintiffs' Response thereto, the respective briefs in support, and all other matters of record, it is hereby ordered and decreed as follows:

1. The Motion is granted as to the Remote Purchasers' claims for Breach of Contract, Breach of Express Warranty, Breach of Implied Warranty of Habitability, and Breach of Implied Warranty of Workmanlike Performance, and the following Counts are hereby dismissed from Plaintiffs' Complaint:

a. Plaintiffs Margaret Ann Joy and Michael Joy: Counts 1 and 2;

b. Plaintiffs Hetal Christian and Nilesh Christian: Counts 4 and 5;

c. Plaintiff Janet Colleran: Counts 7, 8, 9, and 10;

d. Plaintiffs Xingye Huang and Qingsong Zheng:

Counts 37 and 38;

e. Plaintiffs Timothy Klein and Albany Klein: Counts 40, 41, 42 and 43;

f. Plaintiffs Ruochuan Tang and Shiru Wang: Counts 84 *and* 85; and

g. Plaintiffs Alison Warner and William Warner: Counts 87, 88, 89 and 90.

2. The Motion is denied as to the Remote Purchasers' claims for Violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 *et seq.*[1]

---

Factual Background and Procedural Posture

1. Presently before the court is the motion for partial summary judgment of defendants, The Cutler Group, Inc., David Cutler Group, and David M. Cutler, individually (collectively, "defendants"). At issue is whether subsequent purchasers of residential properties may sue the original builder/vendor of those properties for breach of contract, breach of express warranty, breach of the implied warranties of habitability and workmanlike construction, and for violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law (UTPCPL). Upon review of the motion, plaintiffs' response, and all other matters of record, the motion will be granted in part and denied in part.

This case arises from alleged construction defects in various properties located in the "Malvern Hunt" residential development in Exton, Pennsylvania. Defendants, The Cutler Group, Inc. and/or David Cutler Group (hereinafter "Cutler Group"), constructed the homes at issue between the years 2000 and 2005. On April 12, 2012, forty plaintiffs (representing twenty sets of homeowners) filed suit by way of writ of summons. Approximately one year later, on April 1, 2013, plaintiffs filed a complaint alleging that the improper design and construction of their homes resulted in, *inter alia*, water intrusion and water damage to various portions of their residences.

Of the forty plaintiffs initially named in this action, thirteen of them (the "subsequent purchasers") did not purchase their homes directly from Cutler Group, but instead purchased them from private sellers (the "original purchasers") who themselves had purchased the properties from Cutler Group. In subsequent filings, plaintiffs' counsel has represented that eight subsequent purchasers (representing four sets of homeowners) have chosen to voluntarily withdraw from this action. Those plaintiffs are: (a) Janet Colleran; (b) Xingye Huang & Qingsong

Zheng; (c) Timothy Klein & Albany Klein; and (d) Ruochuan Tang & Shiru Wang. However, until these individual have entered a formal withdrawal, the court is bound to treat them as party-plaintiffs. *See* Pa.R.C.P. No. 229(a) ("A discontinuance shall be the exclusive method of voluntary termination of an action, in whole or in part, by the plaintiff before commencement of the trial.").

On the day the complaint was filed, five of the thirteen subsequent purchasers had obtained an "assignment" of both the agreement of sale and agreement of limited warranty that Cutler Group had entered into and extended to the original purchaser. These assignments purported to transfer from the original purchasers to the subsequent purchasers any "right" and "interest" that the original purchaser/assignors had in the sales agreement and limited warranty to the five subsequent purchasers/ assignees. The five subsequent purchasers/assignees each asserted the following claims against Cutler Group in the complaint:

1. Breach of contract (based upon the assignment of the agreement of sale entered into between the original purchaser/assignors and Cutler Group);

2. Breach of express warranty (based upon the assignment of the limited warranty agreement entered into between the original purchaser/assignors and Cutler Group);

3. Breach of implied warranty of habitability;

4. Breach of implied warranty of workmanlike construction; and

5. Violation of the UTPCPL, 73 P.S. § 201-1 et. seq.

The remaining eight subsequent purchasers had not executed an assignment of the agreement of sale and limited warranty with their original-purchaser counterparts. As a result, they only asserted claims for breach of the implied warranties of habitability and workmanlike construction and violation of the UTPCPL, and excluded any claims of breach of contract and breach of express warranty.

It is evident from the complaint that, at the time it was filed, plaintiffs took the position that assignments of the agreements of sale and limited warranties were only necessary to support the five subsequent purchasers/assignees' additional claims for breach of contract and breach of express warranty. When the complaint was filed, the Superior Court of Pennsylvania had held that the implied warranty of habitability exists even in the absence of a contract between a builder/vendor and a homeowner, and that, as a result, the warranty ran to second or subsequent purchasers of newly built residential properties. *See Conway v. Cutler Group, Inc.,* 57 A.3d 155 (Pa. Super. 2012). However, the Superior Court's holding in Conway was subsequently appealed, and on August 18, 2014, the Pennsylvania Supreme Court issued a unanimous opinion reversing the Superior Court. The court concluded that an action for breach of the implied warranty of habitability requires contractual privity between a builder/vendor and homeowner, and that, consequently, the warranty does not run to second or subsequent purchasers. *See Conway v. Cutler Group, Inc.,* 99 A.3d 67 (Pa. 2014). The complaint herein was filed after issuance of the Superior Court's opinion in Conway, but prior to

the Supreme Court's reversal. Thus, at the time of filing, the Superior Court's holding in Conway was the law in Pennsylvania, and *all* of the Subsequent Purchasers were unequivocally entitled to maintain an action for breach of the implied warranty of habitability regardless of whether they had obtained an assignment of the agreement of sale from their original-purchaser counterparts. Plaintiffs' complaint also took the position-evident from the subsequent purchasers that did not have Assignments at the time of filing-that an assignment was unnecessary to maintain an action for breach of the implied warranty of workmanlike construction and violation of the UTPCPL. *But see, Manor junior Coll. v. Kaller's, Inc.*, 507 A.2d 1245, 1249 (Pa. Super. 1986) (Holding that purchaser must be in privity of contract with a builder/vendor to maintain action for breach of the implied warranty of workmanlike performance); *Valley Forge Towers S. Condo. v. Ron-Ike Foam Insulators, Inc.*, 574 A.2d 641, 647 (Pa. Super. 1990), *aff'd*, 605 A.2d 798 (Pa. 1992) (Holding only that "strict technical privity" was not required to sustain a cause of action under the UTPCPL). The court notes, in any event, that after the complaint was filed and during the course of discovery, the remaining eight subsequent purchasers did obtain assignments from their original-purchaser counterparts that were either identical or materially similar to those assignments that the five subsequent purchasers had obtained at the time of filing. As a result of the Supreme Court's decision in *Conway, supra*, plaintiffs now argue that these assignments permit all of the subsequent purchasers to maintain not only the breach of contract and express warranty claims, but also the claims for breach of the implied warranties of habitability and workmanlike construction. Plaintiffs have also filed a motion to amend their complaint to bring claims for breach of contract and breach of express warranty on behalf of two sets of homeowners (Plaintiffs Margaret Ann Joy & Michael Joy, and Hetal Christian & Nilesh Christen) who did not have an assignment of the agreements of sale and limited warranties at the time the complaint was filed.

On motion for partial summary judgment, defendants have set forth three reasons why the court must dismiss all claims asserted by the subsequent purchasers. First, defendants argue that both the agreements of sale and agreements of limited warranty entered into between Cutler Group and the original purchaser contained contractual provisions that either prohibited or limited the original purchaser' ability to make an assignment of their rights under those agreements. As a result, argues defendants, each of the assignments entered into between the original and subsequent purchasers are invalid and to no effect. Second, defendants claim that, even if these "non-assignment" clauses were held to be unenforceable by this court, the assignments are still ineffective because, at the time they were made, each of the original purchaser had already sold their respective properties to the subsequent purchasers, and therefore had, in essence, "nothing to assign". Finally, defendants argue that the assignments are invalid because they are not supported by adequate consideration. (*See* Defs.' Mot. at ¶¶ 40 — 55).

Discussion

"Privity of contract" has been defined as "[t]he relationship between the parties to a contract, allowing them to sue each other but preventing a third party from doing so." Black's Law Dictionary, 1394 (10th ed. 2009); *see also Phillips v. Cricket Lighters*, 841 A.2d 1000, 1006 (Pa. 2003) ("For parties to be considered to be in privity, a contractual relationship must exist between them."). Thus, the court begins with the unremarkable premise that, unless a contract confers the status of intended third-party beneficiary, privity of contract is a necessary prerequisite to maintain an action for breach of a residential sales agreement and breach of an agreement of warranty extended in connection with the sale of a residence. *See generally Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC*, 40 A.3d 145 (Pa. Super. 2012); *Scarpitti v. Weborg*, 609 A.2d 147, 149 (Pa. 1992). The Pennsylvania Supreme Court's recent decision in *Conway v. Cutler Group, Inc.*, 99 A.3d 67 (Pa. 2014) also makes clear that contractual privity is necessary to maintain an action for breach of the implied warranty of habitability. As explained by the court in *Conway*, the implied warranty is "rooted in the existence of a contract-an agreement of sale-between the builder-vendor of a residence and the purchaser-resident." *Id.* at 70. As a result, the warranty does not run to second or subsequent purchasers of newly constructed residential properties because such purchasers were never in privity of contract with the original builder/vendor. *Id.* at 73. Finally, the court notes, consistent with the Superior Court's holding in *Manor Junior Coll. v. Kaller's, Inc.*, 507 A.2d 1245, 1249 (Pa. Super. 1986), that the purchaser of a newly constructed residential home must be in contractual privity with the builder/vendor in order to maintain an action for breach of the implied warranty of workmanlike construction. Thus, four of the five claims that have been asserted by the subsequent purchasers (breach of contract and express warranty, and breach of the implied warranties of habitability and workmanlike construction) require privity of contract as a prerequisite to maintain each of those actions.

There are, however, circumstances under which a non-contracting party may bring an action in assumpsit against a party to a contract. Under well-settled common law principles, the performance of a contract may be delegated to another party by way of an assignment—*i.e.*, when one party to an existing contract transfers the contract's obligations and benefits to another party. *See Greater Nanticoke Area Educ. Ass'n v. Greater Nanticoke Area Sch. Dist.*, 938 A.2d 1177, 1185 (Pa. Cmwlth. 2007); Restatement (Second) of Contracts, § 318(1) (1981). Thus, although "privity of contract is personal privity, and is confined to the persons of the contracting parties", *Deynzer v. Columbia Gas of Pennsylvania, Inc.*, 875 A.2d 298, 301 (Pa. Super. 2005), a contract validly assigned permits the assignee to maintain an action in assumpsit, despite not being in privity with the other original contracting party.

In this case, defendants argue that the subsequent purchasers are prohibited from maintaining their actions in assumpsit against them on the basis of two "non-assignment" clauses contained in the agreements

of sale and limited warranty entered into between Cutler Group and the original purchaser. Each of those clauses provide as follows:

> *Agreement of Sale*: THIS AGREEMENT SHALL NOT BE ASSIGNED OR TRANSFERRED by Buyer without the written consent of [the] Seller first being obtained. Subject to such limitation upon [the] Buyer's right of assignment, this Agreement shall bind and inure to the benefit of the heirs, personal representatives, successors and assigns of the respective parties hereto.[c]

> *Agreement of Limited Warranty*: This warranty is not transferable. Any obligation under it terminates if the property is resold or shall cease to be occupied by the homeowner to whom it is originally issued.[d]

The agreements of sale and agreements of limited warranty entered into between Cutler Group and plaintiffs Margaret Ann Joy & Michael Joys', and Hetal Christian & Nilesh Christens', original-purchaser counterparts were not made part of the record in this case until defendants filed their response in opposition to plaintiffs' motion for leave to amend the complaint. (*See* Defs.' Res. to Mot. to Amd. at Ex. "A"). Those documents each contain non-assignment clauses identical to the non-assignment clauses quoted above.

Defendants argue that this language is clear, unambiguous, and limited the original purchaser' power to make an assignment of the agreement of sale only upon the consent of Cutler Group, and prohibited the "transfer" of the limited warranty extended by Cutler Group irrespective of whether the original purchaser remained in or sold their properties. Because the original purchaser executed purported assignments to the subsequent purchasers in contravention of these clauses, asserts defendants, each of the subsequent purchasers' claims that sound in assumpsit must fail. The court is compelled to agree.

There is a presumption of assignability in Pennsylvania. "[T]he rights and duties under an executory bilateral contract which does not involve personal skill, trust, or confidence may be assigned without the consent of the other party so long as it does not materially alter the other party's duties and responsibilities." *Smith v. Cumberland Grp., Ltd.*, 687 A.2d 1167, 1172 (Pa. Super. 1997). However, this presumption does not necessarily operate where contracting parties have expressly prohibited assignment by the terms of the contract itself. *See Greater Nanticoke, supra*, 938 A.2d at 1185 (Stating that a contract may usually be assigned unless assignment is "contrary to public policy *or the terms of the contract*) (emphasis supplied); Restatement (Second) of Contracts, § 317(2)(c) (1981) ("A contractual right can be assigned unless assignment is validly precluded by contract"). Thus, the court adheres to the general rule that, where the parties' intent is clear, a court will enforce non-assignment provisions in contracts. *See CGU Life Ins. Co. of Am. v. Metro. Mortgage & Sec. Co.*, 131 F. Supp. 2d 670, 678 (E.D. Pa. 2001)(Observing that in Pennsylvania, "nonassignment clauses are valid, although the Pennsylvania courts scrutinize them carefully by examining both the specific language used and the purposes for which they have been inserted.").

In this case, the intent of the non-assignment clauses is clear and unambiguous, and therefore the court is bound to enforce the plain meaning of those provisions. *See Trowbridge v. McCaigue*, 992 A.2d 199, 203-04 (Pa. Super. 2010)("A fundamental rule in construing a contract is to ascertain and give effect to the intention of the parties.") (internal citation and quotation omitted). In the agreement of sale, Cutler Group, as seller, limited the original purchaser' power to assign the contract only upon first obtaining Cutler Group's consent. In the agreement of limited warranty, Cutler Group prohibited the extension of its limited warranty to only the first-purchasers of its newly constructed residences. The clause not only limits the "transfer" of the limited warranty agreement, but also provides that the warranty terminates upon resale of the property, regardless of whether an assignment was made. Despite the clear meaning of these provisions, each of the subsequent purchasers obtained a purported assignment from their original-purchaser counterparts of any right, claim or interest that the original purchaser had in the agreements of sale and limited warranty. These purported assignments must be held ineffective. *See Willis v. Soffel*, 53 Pa. D. & C.2d 661, 664 (Pa. Com. Pl. 1971)(holding that similarly worded limitation upon assignment of agreement of sale was valid.)On the record before the court, it is undisputed that (a) Cutler Group never consented to the assignments of the agreements of sale; and (b) each of the original purchaser made an assignment of their rights under the limited warranty after the sale of their homes. There is no issue of material fact to be tried. *See* Pa.R.C.P. No. 1035.2(1). Accordingly, defendants' motion will be granted as it applies to the subsequent purchasers' claims for breach of contract, breach of express warranty, and breach of the implied warranties of habitability and workmanlike construction.

Plaintiffs' chief argument in opposition to the enforceability of the non-assignment clauses is the Pennsylvania Supreme Court's decision in *Egger v. Gulf Ins. Co.*, 903 A.2d 1219, 1224 (Pa. 2006). There, the court held that a non-assignment clause in an insurance contract was not enforceable after an insured-beneficiary sustained a loss under the terms of an insurance policy with its insurer. Citing its prior holding in *Nat'l Mem'l Services, Inc. v. Metro Life Ins. Co.*, 49 A.2d 382 (Pa. 1946), the court reasoned that restrictions on post-loss assignments are void as against public policy because such assignments do not increase the risk to the insurer associated with an assignee, as the insurer's payment obligation has already become "fixed". *Id.* at 1224. Analogizing from *Egger* and related cases, plaintiffs argue that the non-assignment clauses in the agreements of sale and limited warranty should also be rendered unenforceable because, just like an insurer, Cutler Group's obligation to construct a "defect-free" home does not change, regardless of who (a first, second, or subsequent purchaser) owns the property. (*See* Plfs.' Res. at ¶37, p.13). The court does not accept this argument.

It has been observed that "nearly all of the reported Pennsylvania case law on the issue of the enforceability of nonassignment clauses has come in the context of insurance." *CGU Life Ins. Co., supra*, 131 F. Supp.

at 678; *see also Egger*, 903 A.2d at 1223 — 27 (reviewing cases). Indeed, every reported Pennsylvania and Third Circuit case that has cited *Egger* has done so in the context of insurance litigation. To graft the reasoning in *Egger* to contracts far afield from a policy of insurance would constitute an unwarranted extension of the holding in that case, and would run afoul of the rule that contracts which preclude or limit assignment are generally enforceable. *See Cumberland Grp., Ltd.*, 687 A.2d at 1172; *Greater Nanticoke*, 938 A.2d at 1185. Acceptance of plaintiffs' broad reasoning could potentially render an innumerable number of otherwise valid non-assignment clauses in contracts unenforceable. This the court declines to do.

Because the court determines that the non-assignment clauses in the agreements of sale and limited warranty are valid and enforceable, the court does not consider defendants' additional arguments that the assignments are ineffective because (1) they lacked consideration; and (2) the original purchaser had already sold their respective properties to the subsequent purchasers.

Finally, defendants also assert that the subsequent purchasers' claims for violation of the UTPCPL are subject to dismissal. In support of that argument, defendants state:

50. Relevant case law dictates that a plaintiff lacking privity with the defendant cannot sustain a claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL) because there was no commercial activity between them. (Cited cases omitted).

51. Therefore, the [subsequent] purchaser plaintiffs have no claim under the UTPCPL.

(Defs.' Mot. at ¶¶ 50 — 51). In *Valley Forge Towers S. Condo. v. Ron-Ike Foam Insulators, Inc.*, 574 A.2d 641 (Pa. Super. 1990) the Pennsylvania Superior Court held that "strict technical privity" was not always an element of a private cause of action under the UTPCPL, and that liability also extended to third-parties "specifically intended [by the defendant] to rely upon the fraudulent conduct, and those whose reasonable reliance was specially foreseeable." *Id.* at 647. In this case, it is undisputed that the subsequent purchasers were not in privity of contract with Cutler Group. Defendants' motion also establishes that plaintiffs may not "stand in the shoes" of their original-purchaser counterparts by way of assignment. (*See* discussion, *supra*). However, the court in *Valley Forge* held that contractual privity is not necessarily an absolute bar to a UTPCPL claim, and defendants have not set forth any argument — *aside from a lack of contractual privity* — why the subsequent purchasers' UTPCPL claims must be dismissed. This is obviously insufficient to justify summary dismissal of the subsequent purchasers' remaining claims, and defendants' motion as to these claims must be denied.

On September 22, 2014, defendants separately filed a motion for partial summary judgment to dismiss plaintiffs' claims for violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law. Whether plaintiffs' remaining UTPCPL claims are subject to dismissal pursuant to that motion will be the subject of a separate order.